## LEVY, SIMON & CO. v. ISAAC BROWN ET AL.

1. ATTORNEY AND CLIENT. *Attorney's authority.  Client's acquiescence.*

  M., an attorney, being employed by L., S. & Co. to collect a claim due them, recovered judgment and had execution issued thereon against the defendants, which was returned *nulla bona*.  M. then had a writ of garnishment issued against B. & Co., and obtained judgment against them as garnishees for the amount of the debt due L., S. & Co.  Execution was then issued against B. & Co., and they enjoined the same.  M. notified L., S. & Co. of the pendency of the injunction proceedings, and that he was attending to the suit for them.  They made no objection to his representing them in the injunction suit, but observed silence on that subject.  *Held*, that, by their silent acquiescence, L., S. & Co. recognized M.'s authority to represent them in the injunction suit, and his employment therein was as full as in the original action.

2. SAME.  *Extent of attorney's authority.*

  In the United States, the weight of authority is against the English rule of law, that an attorney is the general agent of his client in all matters that may arise in the progress of the cause, or the collection of the claim, intrusted to him, and that he may compromise by accepting less than the full sum due, or, where the demand is for goods sold, by receiving back the goods in satisfaction; and the rule has been frequently repudiated by this court.

3. SAME.  *Scope of attorney's authority.*

  An attorney has unlimited authority in conducting the litigation of his client's case; and, where a claim has been intrusted to him for collection, he may take all steps necessary to insure its collection, and has the power to control all legal process, and to compromise or release all attachments or other liens which have accrued in the progress of the litigation, and do not belong to the original demand.

4. SAME.   *Client bound by agreement of his attorney.   Case in judgment.*

M., as attorney, recovered a judgment for his clients, L., S. & Co., and execution having been returned *nulla bana*, he had B. & Co. garnished, and obtained judgment against them as garnishees.   Execution was issued against B. & Co., and they enjoined the same upon a ground which, if established, would have nullified the judgment against them.   But, before any adjudication in the injunction suit, M., the solicitor of L., S. & Co., made a written agreement with the other parties, by the terms of which the complainants were to dismiss their bill, and B., one of the sureties on the bond, was to pay to M. a certain sum of money, to be credited on the judgment of his clients, in consideration that he, as solicitor for L., S. & Co., would discharge the obligors in the injunction-bond from all liability thereon.   The money was paid to M., as agreed, and he gave to the sureties on the bond a written release.   M. died, and L., S. & Co. brought an action on the injunction-bond against the sureties therein.   L., S. & Co. were ignorant of all the transactions of M. in regard to the injunction proceedings, until they were disclosed by the pleas in this action.   *Held*, that the agreement made by M. was within the scope of his authority, and bound his clients.

ERROR to the Circuit Court of Warren County.

Hon. U. M. YOUNG, Judge.

The case is stated in the opinion of the court.

*T. E. Crutcher*, for the plaintiffs in error.

1. Miller had no authority, by virtue of his employment as an attorney to collect the claim against Lowenhaupt, to represent Levy, Simon & Co., in the injunction suit.   His authority as their attorney ceased when he had obtained judgment against the garnishees, Bodenheim & Co.   *Dennis et al.* v. *McLaurin*, 2 Ga. 606 ; Whart. on Ag. 425 ; *ib.* 375.

2. But if Miller had been the solicitor of the plaintiffs in error, in the injunction suit, he would not have had the authority to release the sureties from liability on the bond.   *Union Bank of Tennessee* v. *Govan*, 10 Smed. & M. 333 ; *Gaillard* v. *Smart*, 6 Cow. 383 ; *Kellogg* v. *Gilbert*, 10 Johns. 220 ; *Marbourg* v. *Smith*, 11 Kan. 554.

3. It is not within the ordinary scope of an attorney's authority to compromise the claim of his client.   Pars. on Con. (5th ed.) 117 ; *Fitch* v. *Scott*, 3 How. 314 ; 7 Cranch, 436 ; *Smith's Heirs* v. *Dixon et al.*, 3 Metc. (Ky.) 438.   Nor has an attorney the authority to accept any thing in payment of his

client's claim but money.    *Garvin* v. *Lowry,* 7 Smed. & M. 24.    An attorney cannot enter a retraxit.    *Lambert* v. *Sandford,* 2 Blackf. 137.

4. The release of a sealed instrument must itself be under seal.    And where an agent or attorney makes a release of a sealed instrument, it is necessary that his authority should be given under seal.    Chitty on Con. (11th Am. ed.) 1145, 1146. See also *Young* v. *Power,* 41 Miss. 197.

*Birchett & Gilland,* for the defendants in error.

1. Miller's authority, as attorney for the plaintiffs in error, continued after judgment recovered, and extended to the defence of any hostile proceeding by the opposite party to defeat the collection thereof.    Whart. on Ag., sect. 589.    But they knew that Miller was acting for them in the injunction suit, and acquiesced therein.    On this point, see *Keirn* v. *Carson,* 12 Smed. & M. 431.    It is presumed in all collateral proceedings, that an attorney who has appeared for a litigant, without service of process, had authority to do so.    *Harshey* v. *Blackmarr,* 20 Iowa, 161 ; *Arnold* v. *Nye,* 23 Mich. 286.    And this presumption is conclusive.    *Field* v. *Gibbs,* 1 Pet. C. Ct. 155 ; *Baker* v. *Stonebraker's Administrator,* 34 Mo. 175 ; *Reed* v. *Pratt,* 2 Hill, 64 ; 3 Edw. Ch. 174 ; *Carpentier* v. *Oakland,* 30 Cal. 439 ; 37 N. Y. 502 ; 42 N. Y. 26 ; 2 Chitty on Con. (11th ed.) 816 ; 14 N. Y. 25 ; 44 Vt. 546 ; 4 How. 342 ; 41 Miss. 647.

2. An attorney employed to bring a suit has authority to compromise the same.    Whart. on Ag., sects. 590, 591 ; *Brooks* v. *New Durham,* 55 N. H. 559 ; *Bonney* v. *Morrill,* 57 Me. 368 ; *Jenkins* v. *Gillespie,* 10 Smed. & M. 31 ; *Smith* v. *Bossard,* 2 McCord Ch. 406 ; *Clark* v. *Randall,* 9 Wis. 135.

3. The decree dismissing the bill in chancery with the consent of Levy, Simon & Co., through their attorney, was a final settlement of all matters connected with that proceeding, and no damages could accrue on the injunction-bond.    *Herbert* v. *Alexander,* 2 Call, 499 ; *Smith* v. *Bossard,* 2 McCord Ch. 406 ; Whart. on Ag., sect. 585 ; Freem. on Judg., sect. 500 ;

*Bradish* v. *Gee*, 1 Amb. Ch. 229 ; *Gifford* v. *Thorn*, 1 Stockt.
702 ; *Jones* v. *Williamson*, 5 Coldw. 371 ; *Gorham* v. *Gale*, 7
Cow. 739 ; *Pierce* v. *Perkins*, 2 Dev. Eq. 250 ; *Hudson* v.
*Allison*, 54 Ind. 215 ; Freem. on Judg., sects. 262, 270 ; *McCor-
mick* v. *Sisson*, 7 Cow. 715 ; *Wilkinson* v. *Howell*, 1 Moo. &
M. 495 ; 5 Gill & J. 239 ; 1 Fost. (N. H.) 61 ; 11 Vt. 549.

CHALMERS, J., delivered the opinion of the court.

This is a suit on an injunction-bond, which originated under
the following circumstances : Levy, Simon & Co. (afterwards
Levy, Scheur & Co.), of New Orleans, placed in the hands of H.
H. Miller, a lawyer of Vicksburg, a claim for collection against
the estate of Isaac Lowenhaupt, deceased. Suit was promptly
brought, and resulted in the recovery of a judgment against
Catherine Lowenhaupt, executrix of said estate, for $2,020.87.
An execution on this judgment having been returned *nulla
bona*, Miller caused writs of garnishment to be issued, which
were served on Bodenheim & Co. and Louis Hoffman. Judg-
ment by default was obtained against Hoffman, which was
subsequently reversed, on appeal, in this court, and the writ
quashed for some informality. Bodenheim & Co. answered
the writ served on them, admitting an indebtedness to the
estate of Lowenhaupt greater than the judgment against the
principal debtor, and, therefore, judgment was entered against
them as garnishees. Some months afterwards, Bodenheim &
Co. filed their bill in the Chancery Court of Warren County,
enjoining an execution which had been issued on this judg-
ment, and setting forth that they had discovered, since the
rendition of said judgment, that they had been mistaken in
answering that they were indebted to the estate of Lowen-
haupt, and had now ascertained that their note, which they
supposed was payable to Catherine Lowenhaupt as executrix,
was really payable to said Catherine individually, and that she
claimed that the same was her separate property. They
prayed that Levy, Simon & Co. and the said Catherine might
be compelled to interplead and settle the true ownership of

said note, and that, pending said litigation, the execution of the judgment against themselves might be enjoined. The injunction-bond now in suit was tendered with the bill, and the writ granted and served on Miller as the attorney of Levy, Simon & Co.

Miller notified his clients of the pendency of this new proceeding, and of his attention to it. By their silence and acquiescence they recognized his authority to represent them, so that there is no ground for doubting that, as to the new litigation, his employment was as complete as in the original suit. Before the filing of any answer or other pleading by him, however, a written agreement of compromise and settlement of the injunction suit was entered into between all the parties thereto, to wit, Miller as the representative of Levy, Simon & Co., Mrs. Catherine Lowenhaupt, Bodenheim & Co., and Isaac Brown and Joseph Bazinsky, the two latter being the sureties on the injunction-bond, and the defendants in the present litigation. By this arrangement, the injunction proceedings were to be dismissed, and all liability on the bond to be released and discharged, in consideration of which, Brown, one of the sureties, was to pay to Miller, within ninety days, $713, to be credited on the judgments held by his clients; and it was further agreed that Brown should realize, as rapidly as possible, upon certain collaterals which had been placed in his hands by Bodenheim & Co., and should apply the proceeds to the extinguishment, in full, of said judgments, and then pay over the excess, if any, to Mrs. Lowenhaupt. This agreement was carried out. The bill for injunction was dismissed; a written release was given by Miller to the sureties on the bond; the money agreed to be paid was by the sureties paid to Miller.

Miller died, without having communicated to his clients any information of these transactions. Several months after his death, Levy, Simon & Co. brought this suit against Brown and Bazinsky, the sureties on the injunction-bond, seeking to recover from them the penalty thereof, which had become

apparently due by the dismissal of the bill. Plaintiffs had no knowledge of the facts above detailed until they were disclosed by the pleas here interposed. Do these facts constitute a defence to this action?

This depends upon whether Miller, the attorney of plaintiffs, by reason of his general authority as such, had the power to make the compromise and release the sureties on the injunction-bond without the knowledge or assent of his clients. The case, therefore, involves a consideration of the powers of attorneys in dealing with claims in their hands for collection or suit.

In England, it is broadly laid down that the attorney is the general agent of his clients in all matters that may be deemed likely to arise in the progress of the cause or the collection of the claim, and hence it is held that he may compromise by accepting less than the full sum due; or, where the demand is for the price of goods sold, by receiving back the goods in satisfaction. If he acts without the instructions of his client, he will not be liable to him if his acts have been *bonâ fide*, and marked with reasonable care and skill. If he acts in violation of express instructions, he will be liable to his client; but the latter will be bound by his action, so far as the opposite party is concerned, unless that party was cognizant of the violated instructions. *Cheron* v. *Parrott*, 14 C. B. (N. s.) 74; *Fray* v. *Voules*, 1 El. & El. 839; *Prestwick* v. *Poley*, 18 C. B. (N. s.) 806; *Strauss* v. *Francis*, L. R. 1 Q. B. 379.

In the elaborate note to Story on Agency, sect. 24, and also in Wharton on Agency, sect. 592, it is said that the American rule is the same as the English. If these learned authors mean to say that a majority of the American courts recognize an inherent right in the attorney to compromise the original demand placed in his hand, so as to receive in full satisfaction less than the amount due, or to substitute claims upon other parties, or to take property in satisfaction of a money demand, or to release any security existing when he received the claim, we cannot agree with them. That there are cases going to this

extent is true, but we think that the decided weight of authority in this country is the other way. Unquestionably, such a rule has been repeatedly repudiated by this court. *Holker* v. *Parker*, 7 Cranch, 436 ; *Abbe* v. *Rood*, 6 McLean, 106 ; *Derwort* v. *Loomer*, 21 Cow. 245 ; *Nolan* v. *Jackson*, 16 Ill. 272 ; *Doub* v. *Barnes*, 1 Md. Ch. 127 ; *Langdon* v. *Potter*, 13 Mass. 320 ; *Davidson* v. *Rozier*, 28 Mo. 287 ; *Filby* v. *Miller*, 25 Pa. St. 264 ; *Vail* v. *Jackson*, 15 Vt. 314 ; *Lockhart* v. *Wyatt*, 10 Ala. 231 ; *Jones* v. *Ransom*, 3 Ind. 327 ; *Stackhouse* v. *Reese*, 15 Iowa, 122 ; *Succession of Weigel*, 18 La. An. 49 ; *Maddox* v. *Bevan*, 39 Md. 485 ; *Smith's Heirs* v. *Dixon et al.*, 3 Metc. (Ky.) 438.

It is quite generally held, however, even by those courts which deny to the attorney the right to compromise a claim placed in his hand, that he has full control over the litigation necessary to insure its collection, and in the conduct and progress of it may take such action as he deems proper. The reason for the distinction is obvious : the owner of the claim must always be the proper judge of its value, and of the terms upon which he is willing to extinguish it, or to release any of the securities by which it was protected when he placed it in the hands of the attorney ; and the latter, therefore, must consult him before taking any step which is likely to produce these results. But the client cannot know as well as his lawyer the steps necessary to insure its collection, or estimate so accurately the value of the legal securities which may be evolved in the course of the litigation. It is because of his ignorance of these matters that he employs an attorney, and submits to his superior judgment the conduct of the litigation.

To impose upon the attorney the necessity of consulting with his client whenever propositions are made to him with regard to these matters, which in his judgment are advantageous, would so embarrass and thwart him as in a great measure to destroy his usefulness ; hence it is that the courts quite generally concede to the attorney unlimited authority over the conduct of the litigation, including the power to control all

legal process, and to compromise or release all attachment or other liens which have accrued in the progress of the cause, as collateral thereto, and not belonging to the original demand. *Commissioners* v. *Younger*, 29 Cal. 147; *Phillips* v. *Rounds*, 33 Me. 357; *Gaillard* v. *Smart*, 6 Cow. 385; *Ford* v. *Williams*, 13 N. Y. 577; *Pierce* v. *Strickland*, 2 Story, 292; *Monson* v. *Hawley*, 30 Conn. 51; *Moulton* v. *Bowker*, 115 Mass. 36; *Gordon* v. *Coolidge*, 1 Sumn. 536; *Jenney* v. *Delesdernier*, 20 Me. 183. Some of the cases cited extend to the attorney a wider latitude than could be sanctioned in this State, where, by a series of adjudications, his authority has been confined within narrower limits. Thus, it has been held that he cannot release a levy on personalty (*Banks* v. *Evans*, 10 Smed. & M. 35); nor grant a stay of execution (*Reynolds* v. *Ingersoll*, 11 Smed. & M. 249); nor assign a judgment to a stranger, who has paid to him the amount due on it (Walk. 431; we do not commit ourselves to an indorsement of this decision to its full extent); nor compromise in any manner the claim placed in his hands (*Fitch* v. *Scott*, 3 How. 314); nor receive any thing save lawful money in satisfaction of it (*Garvin* v. *Lowry*, 7 Smed. & M. 24). All of these decisions relate to the dealings of the attorney with the original claim placed in his hands, and the liens which, by operation of law, follow upon its reduction to judgment. They are believed to announce a rule more stringent than that which prevails elsewhere, in so far as they deny authority to release levies and stay executions. But even if we concede that the principle inculcated by them would forbid the release by the attorney of any security acquired during the litigation, either against the original debtor or against any person who may have made himself liable for the debt, and if we admit that the attorney is compelled to maintain inviolate and unimpaired both the claim placed in his hand and the liability of all who have become answerable for it, this does not necessitate a repudiation of the act of the attorney in this case; and while we are not called upon to depart from the principle of these

decisions, neither do we propose to extend it further. The bond here sued upon was not given in any proceeding against the original debtor, Lowenhaupt, nor had these defendants in any manner made themselves liable for his engagements.

In releasing them, therefore, the attorney was neither diminishing the original value of the claim placed in his hands, nor extinguishing any security which had accrued to his clients in the litigation with their debtor.

Their judgment against that debtor, as well as their judgment against the garnished debtors of that debtor, stand yet in full force and unimpaired. The garnishees had filed a bill which, upon its face, afforded good ground of injunction, and which, if established, would have resulted in a vacation of the judgment against themselves. To avoid the doubtful result of this litigation, the attorney of plaintiffs agreed that if the sureties on the bond would pay to him for his clients a certain sum, to be credited upon the judgments which he had obtained against the garnishees, and would devote to the same end the collaterals which had by the garnishees been placed in their hands to save them from loss, he would release and discharge the bond executed by them. Mrs. Lowenhaupt agreed to postpone her claim to that of plaintiffs. Bodenheim & Co. agreed to dismiss their bill. All this was carried out in good faith. Now, when years have elapsed, when Bodenheim & Co. have become insolvent, when the collaterals which were placed in the hands of the defendants to indemnify and protect them have either been collected or proven worthless, this suit is brought to assert against defendants a liability on their bond, which became absolute by reason of the dismissal of the bill in accordance with the agreement made with plaintiffs' lawyer. It is true that plaintiffs had no knowledge of this agreement; but it is also true that but for the agreement the bill would not have been dismissed, and the absolute liability would not have accrued. Plaintiffs cannot take advantage of the dismissal of the bill, induced by their attorney, and repudiate the release of the

sureties on the injunction-bond, which was the price of said dismissal.

Our conclusion is, that the agreement entered into by Miller was within the scope of his authority, and therefore obligatory on his clients.

Judgment affirmed.