# PROVIDENCE COUNTY.

———◆———

### Zebulon Whipple, Trustee, *vs.* Henry Whitman.

The American law, unlike the English, does not empower an attorney at law to settle a pending suit without the knowledge and assent of his client.

Courts in this country, however, are inclined to favor a compromise fairly made by an attorney, and will uphold it if good reasons can be found for it.

Hence this court refused to disturb a compromise made by an attorney, with the assent of the party in interest, but without the knowledge of the plaintiff of record, the attorney's client, when the compromise was reasonable and appeared advantageous.

A. sued, as trustee of his wife, who, under the Rhode Island Statutes, could at any time by her sole act assign the claim sued. A.'s attorney, without his knowledge, but with the wife's assent, compromised the suit. A. waited nearly a year and then filed his petition for a trial of the case; the wife claiming to have been coerced into giving her assent, but the coercion rose only from a mortgage executed by A. and his wife:

*Held,* that the petition must be dismissed.

PLAINTIFF'S petition for a trial.

*January* 19, 1882. Durfee, C. J. This is a petition for the trial of an action, brought in this court by the petitioner as trustee of his wife, in which judgment was rendered for the defendant on submission for ten cents costs. The petitioner alleges in the petition that his attorneys submitted to judgment without his knowledge and consent, and against his wishes and interest. He makes affidavit in support of the petition. The petitioner was in fact in jail under sentence for four months when the judgment was rendered, and it is not claimed that he personally either knew of or consented to it.

The action was for money lent. The money originally came from policies of insurance payable to the father of the petitioner's wife and assigned by him to her. According to the better testimony the plaintiff had no ground for expecting to recover more than about thirty-one hundred dollars, though, being inclined to exaggerate, he did in fact claim a much larger sum. The defendant, on the other hand, maintained and now testifies that he had paid all but nineteen hundred dollars, and that he had claims in set-off or counter claims in excess of that amount. One Samuel G. Curry also had a claim against the petitioner or his wife for

about eighteen hundred dollars, money lent on interest at five per cent. a month, for which he was secured by mortgage on the suit and on Mrs. Whipple's furniture. The judgment was the result of a settlement by which one hundred and fifty dollars were paid to Mrs. Whipple; twelve hundred dollars to Samuel G. Curry, in extinguishment of his claim ; and three hundred dollars to the attorneys, to compensate them for their services. Mrs. Whipple also secured permission to occupy free of rent for a certain time her house, which was under mortgage to the defendant. The settlement was made with the consent and approval of Mrs. Whipple, acting under the advice of two trustworthy friends, men of business, whom she had called in at the suggestion of the attorneys. She, however, asserts that she consented under pressure. The inducements which principally led to the settlement, aside from the advantages of money in hand over money in suit, were, *first*, the danger of delay, which, owing to the ruinous rates of interest promised to Curry, was likely to prove as disastrous as defeat ; and *second*, the possibility that an administrator might be appointed on the estate of Mrs. Whipple's father, at the instigation of the defendant, unless he was appeased, and might contest her right to the money in suit on the ground that her father, who was insolvent when he assigned to her, executed the assignment in fraud of his creditors. We are satisfied that the settlement was fair and probably advantageous, and that if the attorneys had power to compromise they are not chargeable with any abuse of their power. Judgment was rendered for the defendant in the action in April, 1880. This petition was not filed until April 9, 1881. One of the results of the settlement was that the mortgage which Curry held on Mrs. Whipple's furniture was transferred for her benefit to her mother. This mortgage was subsequently surrendered, and a new mortgage given on the furniture, thus released, by the petitioner and his wife, to raise money for him. Under the new mortgage the furniture has been sold to satisfy the debt secured by it. The question is whether, in view of all the circumstances, the settlement shall be upheld or a trial granted.

The decisions on the power of an attorney to compromise are contradictory. In England, however, the doctrine established by

the later cases, after some vacillation, is, that the attorney has power, by virtue of his retainer, to compromise the action in which he is retained, provided he acts *bonâ fide* and reasonably, and does not violate the positive instructions of his client, and that the compromise will bind the client, even if he does violate instructions, unless the violation is known to the adverse party. *Swinfen* v. *Swinfen*, 18 C. B. 485 ; *Swinfen* v. *Lord Chelmsford*, 5 H. & N. 890 ; *Chambers* v. *Mason*, 5 C. B. N. S. 59 ; *Chown* v. *Parrott*, 14 C. B. N. S. 74 ; *Prestwich* v. *Poley*, 18 C. B. N. S. 806 ; *Fray* v. *Voules*, 1 El. & El. 839 ; *Butler* v. *Knight*, L. R. 2 Exch. 109 ; *Thomas* v. *Harris*, 27 L. J. N. S. Exch. 353 ; *In re Wood, ex parte Wenham*, 21 W. R. 104. The reason is, the attorney, within the scope of his retainer, is considered the general agent of the client. And it is strongly argued in support of the power, that it ought to be upheld both as a matter of public policy and for the good of the client, inasmuch as the attorney generally knows vastly better than the client whether it is better to risk the trial of the suit or to compromise it, and is often called upon to do the one or the other suddenly in the absence of the client. See Wharton on Agency, § 590.

The English doctrine finds support in a few American cases: *Wieland* v. *White*, 109 Mass. 392 ; *Potter* v. *Parsons*, 14 Iowa, 286 ; *Holmes* v. *Rogers*, 13 Cal. 191 ; *North Missouri R. R. Co.* v. *Stephens*, 36 Mo. 150 ; *Reinhold* v. *Alberti*, 1 Binn. 469 ; but the main current of decision in this country runs powerfully against it. Weeks on Attorneys at Law, § 228 ; *Ambrose* v. *McDonald*, 53 Cal. 28 ; *Preston* v. *Hill*, 50 Cal. 43 ; *Levy, Simon & Co.* v. *Brown*, 56 Miss. 83 ; *Picket* v. *Merchants' Nat. Bank of Memphis*, 32 Ark. 346 ; *Walden* v. *Bolton*, 55 Mo. 405 ; *Mandeville* v. *Reynolds*, 68 N. Y. 528 ; *Wadhams* v. *Gay*, 73 Ill. 415 ; *The People* v. *Quick*, 92 Ill. 580. The American courts, however, show a leaning in favor of such compromises, when fairly made, and readily uphold them if they can find grounds on which to do so. " Although," says Chief Justice Marshall, in *Holker* v. *Parker*, 7 Cranch, 436, 452, " an attorney at law, merely as such, has strictly speaking no right to make a compromise, yet a court would be disinclined to disturb one which was not so unreasonable in itself as to be exclaimed against by all, and to create an

impression that the judgment of the attorney has been imposed on or not fairly exercised." See, also, *Roller* v. *Wooldridge*, 46 Tex. 485 ; *Potter* v. *Parsons*, 14 Iowa, 286.

In the case at bar there are several reasons why the court should not disturb the compromise. The compromise was in itself fair and reasonable, if not eminently advantageous. We mention this rather as a favorable feature than as an absolute reason for upholding the compromise, since a party who prefers litigation to settlement is generally entitled to enjoy his preference. *Fray* v. *Voules*, 1 El. & El. 839. The case here, however, was peculiar in its circumstances. The plaintiff was suing, not for himself, but as trustee for his wife. She was the real owner, so to speak, of the lawsuit. Under our statute, Gen. Stat. R. I. cap. 152, § 6,[1] she might, for aught we can see, have assigned for valuable consideration her equitable or beneficial interest in the suit, or in the debt sued for, absolutely and without joinder with her husband, to some third person, or even to the defendant himself. But if she had the right to do this, we do not see why she had not also the right, in the absence of her husband, acting under the advice of trustworthy friends, to enter into a fair and reasonable compromise of the suit. To hold that the husband might arbitrarily reject a compromise, which she desired, would be to put her completely at his mercy. It seems to us that the most which he could require, considering his purely titular relation to the suit, would be indemnity for his costs and expenses as trustee, which in the case here he seems to have substantially got in the settlement. It is true the wife claims to have acted under pressure ; but the pressure, so far as appears, came from Samuel G. Curry, whom she and her husband, by their contracts and mortgages, had armed with highly oppressive powers. We do not think it was such as to invalidate the compromise. Moreover, even if it was

---

[1] As follows : " Any married woman may sell and convey any of her personal estate, other than that described in the next preceding section, in the same manner as if she were single and unmarried, and may make contracts respecting the sale and conveyance thereof, with the same effect, and with the same rights, remedies, and liabilities, as if such contracts had been made before marriage; but nothing in this section shall be construed to authorize any married woman to transact business as a trader."

such, it was the duty of the petitioner, if he chose not to abide by the compromise, to repudiate it promptly and offer to do what he could to reinstate the parties *in statu quo*. *Mayer* v. *Foulkrod*, 4 Wash. C. C. 511; *Peru Steel & Iron Co.* v. *Whipple File & Steel Manuf. Co.* 109 Mass. 464. He did not do so, but waited nearly a year before bringing this petition, enjoying meanwhile the benefit of the settlement. He does not even now offer restitution, but, on the contrary, he has taken advantage of the surrender of the mortgage on his wife's furniture to mortgage it anew, thus ratifying the settlement to that extent, and, as he cannot ratify in part without ratifying *in toto*, virtually ratifying it in its entirety.

We think, therefore, that a trial must be denied, but, under the circumstances, without costs.                *Petition dismissed.*

*James C. Collins, Ziba O. Slocum & John M. Brennan,* for plaintiff.

*Henry B. Whitman,* for defendant.