## CENTRAL TRUST CO v BACKSMAN

Ohio Appeals, 1st Dist, Hamilton Co

No 4815.   Decided May 27, 1935

Robert A. Black, Cincinnati, for plaintiff in error.

Peck, Shaffer & Williams, Cincinnati, and

Frank S. Benton, Newport, Ky., for defendant in error.

542

## OPINION

By MATTHEWS, J.

It will be seen from this statement that the plaintiff was the payee in this check, and that she recovered a judgment for the full amount of it with interest against the defendant who had obtained possession of it through a forged indorsement of her signature and then obtained the amount from the drawee bank.

As we construe the defendant's contentions, they really constitute a denial of liability of an intermediate holder to the payee. And we think it is clear that there is no such liability on the check. The check carried no contract creating such a liability under any circumstances. But a check is property; the ownership and possession of which are safeguarded by the general laws to the same extent as other classes of property.

The claim of the plaintiff, in substance, is, that the defendant without right took possession of this check and exercised dominion over it to her detriment and damage. Using the nomenclature of the law, her claim is that the defendant committed a tort, that is, a trespass, to her damage. Under the old form of pleadnig, the form of remedy was an acton in trover. It was only at a later date that the legal fiction of implying a promise was resorted to so that the owner could waive the tort and recover from the tort-feasor the value of the property appropriated, which he was treated as having received for the use and benefit of the owner of the property, and where the subject-matter was a check, its amount even before it was cashed would be, prima facie, its value, and after the money was actually received on it, of course that would be its value and the measure of the implied promise. Brannan on Negotiable Instruments (5th ed.) p. 293. It is only in that remedial sense, if at all, that the de-

fendant can be said to be bound by contract.

Now did the defendant violate the rights of the plaintiff? It is said that the plaintiff did not own this check. It is certain that through the actual wrong of Graham, and for which Bohn & Company were legally answerable, she lost title to the Proctor & Gamble stock. Graham obtained possession of but not the title to this check through that wrong. Hill & Company treated Graham as the plaintiff's agent and made the check payable to her order. She could, on plain principles, ratify this wrongful assumption of authority. His pretense of representing the plaintiff ended there. When he delivered the check to the defendant, he did not assume to act in a representative capacity. Although he had no title he, in effect, represented himself to be the owner. To give to his possession of the check the appearance of ownership,, he had in the meantime forged the plaintiff's name. It, however, was just an appearance. It conferred no title on him or his indorsee. That being true, it follows that when the defendant took possession of this check, presented it for payment and received from the drawee the money, it tortiously exercised dominion over it inconsistent with the ownership of the plaintiff. It converted the plaintiff's property to its own use. Pursuing her remedy against the defendant bears no resemblance to a ratification of an unauthorized act of an agent.

The case of **Shaffer v McKee, 19 Oh St** 526, bears a strong resemblance to the case at bar. The trial court sustained a demurrer to the payee's petition against an indorsee, through a forged indorsement of the payee's signature, who had collected from the drawee. The Supreme Court reversed the judgment for the defendant in an opinion which was confined to a quotation of the allegations of the petition and an announcement of the reversal of the judgment sustaining the demurrer thereto. The syllabus of that case is:

"A debtor of the plaintiff enclosed and mailed to her a draft on a bank in New York, payable to her order. The draft was stolen from the mail, and the thief, having placed a forged indorsement of the plaintiff's name thereon, sold the same to the defendant, who drew from the bank, the money, and appropriated to his own use. Held: on this state of facts the plaintiff was entitled to recover the amount of the draft from the defendant."

The decision in Shaffer v McKee, supra, that a payee whose indorsement has been forged can recover against one who obtains

possession of the check and collects from the drawee, is sustained by the overwhelming weight of the authorities. The cases are collected in the annotations to the cases of Merchants Bank v The National Capital Press, 31 A.L.R. (288 Fed. 265), 1066 at 1068, et seq., and California Stucco Co. v Marine National Bank, 67 A.L.R. (148 Wash. 341) 1531 at 1535, et seq. The highest courts of twenty states and the District Court of Columbia are in accord and only two are opposed. Of one of these cases (Feitel House Wrecking Co. v Citizens Bank. 159 La. 752) it is said in Brannan on Negotiable Instruments (5th ed.) at page 1073: "The case seems clearly wrong on this point." The author then refers to the numerous cases to the contrary. However, it seems to us that the debatable question in these cases and which the majority decided in favor of the payee is not presented by the facts in this case. That question was, whether a payee to whom the check had not been delivered could recover. In the case at bar, Hill & Company intended to deliver this check to Graham as the payee's agent, and Graham accepted it in that capacity, although he may have at that time entertained a secret plan to defraud. When his act in receiving the check was ratified, delivery to the payee was complete. We find no error, prejudicial to the plaintiff in error, in the record.

The judgment of the Court of Common Pleas is affirmed.

ROSS, PJ, and HAMILTON, J, concur.