## HARTFORD ACCIDENT & IND CO v FIRST NATIONAL BANK

Ohio Common Pleas, Hamilton Co

Decided June 3, 1937

Robert A. Black, Cincinnati, for plaintiff.
Ernst, Cassatt & Cottle, Cincinnati, for defendant.

## OPINION

By SCHWAB, J.

This case was submitted to the court without the intervention of a jury upon the following stipulation of facts:

It is stipulated and agreed by and between the parties hereto that at the times hereinafter mentioned plaintiff was a corporation organized and existing under the laws of Connecticut and engaged in the business of writing various forms of insurance indemnity agreements and contracts of surety; that the defendant was a corporation organized under the National Banking laws, carrying on the general business of banking in the city of Cincinnati; that the Phoenix Indemnity Company was a corporation with its home office in the city of New York, engaged in the business of writing policies of insurance, whereby it agreed to indemnify its assured against certain claims; that there was in force a contract of indemnity between the plaintiff, The Hartford Accident & Indemnity Company and the Phoenix Indemnity Company, whereby the plaintiff agreed to indemnify the Phoenix Indemnity Company and to pay to it such pecuniary loss as it might sustain by forgery; and that by the terms of this agreement the Phoenix Indemnity Company agreed that the plaintiff should be subrogated to all rights accruing to the Phoenix Indemnity Company by reason of loss sustained by any such forgery; that on October 25, 1935, the plaintiff paid to the Phoenix Indemnity Company the sum of $1,994.45, which represented the loss sustained by Phoenix Indemnity Company as the result of forgery.

It is further stipulated that Harry Neal Smith was an attorney at law engaged in the practice of law in the city of Cincinnati, and was the agent and attorney of the Phoenix Indemnity Company, and it was his duty as such attorney and agent to make investigations of claims against the policy holders of the Phoenix Indemnity Company, and to represent the company in the settlement of such claims as were authorized in each instance; that Harry Neal Smith had a bank account in the defendant bank; that in the usual course of its business the Phoenix Indemnity Company referred to Harry Neal Smith, as its agent and attorney, five claims against policy holders of the Phoenix Indemnity Company as follows:

Date—Jan. 17, 1935; Claimant—Inez Rowe, Admrx. of the estate of George Rowe, deceased; Assured—Charles Heyde.
Date—April 30, 1935; Claimant, George Renner, Jr.; Assured—Anton Moder.
Date—July 10, 1935; Claimant—William Price; Assured—William Gilbert, Jr.
Date—July 24, 1935; Claimant—George Hardy; Assured—William Gilbert, Jr.
Date—March 2, 1935; Claimant—John A. Weidmeyer (Andrews Parcel Delivery Service).

The terms of the contract of insurance with each assured gave to the Phoenix Indemnity Company the right to settle with the person making a claim against each assured.

That the said Harry Neal Smith made investigation in each of these claims and reported his findings to the home office of the Phoenix Indemnity Company in New York; that Harry Neal Smith was furnished by the Phoenix Indemnity Company with a book of drafts to be used by him in making payments in settlement of claims; that said book of drafts was so arranged that when Harry Neal Smith wrote or caused to be written a draft therein, a report thereof was made which was called a "letter of advice," and it was the duty of Harry Neal Smith when issuing a draft on behalf of the company, immediately to send to the home office of the company the "letter of advice" on the original draft, together with a release of the claim being made against the assured, which release was to be signed by the claimant, so that when the original draft was presented to the home office of the company by a collecting bank the cashier of the home office had the opportunity to compare the original draft with the duplicate; that in settlement of the five claims above mentioned Harry Neal Smith received instructions from the Phoenix Indemnity Company to

issue drafts to the claimants in settlement of their claims. In each instance Harry Neal Smith made out a draft payable to the claimant and at the same time forwarded to the home office a letter of advice on such draft, together with a forged release of the claim. The total of these five drafts aggregated $1,994.45. In each case the draft was drawn on the Phoenix Indemnity Company by the Phoenix Indemnity Company by Harry Neal Smith, Attorney.

It is stipulated that at the time Harry Neal Smith drew these drafts, he did not intend to deliver them to the parties to whom they were made payable; that in each instance the name of the payee was forged as an endorsement of such draft; that all of these drafts were presented to the First National Bank of Cincinnati, defendant herein, by Harry Neal Smith, whose signature follows the forged signature of the payee on each draft; that after being initialed by R. McEvilley, the vice-president of the bank, the proceeds of the drafts were paid to Harry Neal Smith; that there appears on each draft the endorsement of the First National Bank of Cincinnati, as follows:

"Pay to the order of
any bank, banker or trust company.
Prior endorsements guaranteed.
　(Date)
First National Bank,
Cincinnati, Ohio.
13-1　A. R. Luthy, Cashier 13-1."

The drafts were forwarded by the First National Bank to the First National Bank of the city of New York, and by that bank forwarded to the Chemical Bank & Trust Company of New York, which bank sent the drafts to the Cashier's office of the Phoenix Indemnity Company, where the drafts were paid; that the forgery in each case was not discovered until after the Phoenix Indemnity Company honored and paid the drafts; that thereafter, on or about August 26, 1935, when the discovery was made that the names written on the drafts were not written by or with the authority of any persons named as payees, the Phoenix Indemnity Company notified the defendant bank thereof and demanded from said bank the sum of $1,994.45. Thereafter the Phoenix Indemnity Company paid to the payee in the draft the amount of the draft in settlement of each claim.

The five drafts mentioned in the foregoing agreed statement of facts are attached to the agreed statement of facts, together with the letter of advice and the purported release in each instance. These five drafts are made the subject of five separate causes of action in plaintiff's petition.

It is the contention of counsel for defendant that the drafts sued upon in this case were negotiable instruments and under and by virtue of §8114, GC, were payable to bearer. The pertinent part of §8114, GC, reads as follows:

"The instrument is payable to bearer:
"3. When it is payable to the order of a fictitious or non-existing person and such fact was known to the person making it so payable; * * *"

It is also the contention of counsel for the defendant that where one of two innocent parties must suffer, the loss must fall upon the party who made the fraud possible.

It is also the contention of counsel for the defendant that the persons named as payees in the drafts had no claims against the defendant to which the plaintiff is subrogated.

Under the first contention of counsel for the defendant it is argued that a fictitious person, as that term is used in §8114, GC, does not mean a non-existing person; that where it is never intended to deliver the instrument to the person whose name is inserted as payee, or that he should have any interest in the instrument, the payee is a mere fictitious person in the eye of the law, and the draft is payable to bearer, and that therefore the forgery of the name of the payee becomes irrelevant as to the rights of the parties. A number of cases are cited to support this contention, but in none of them does the court find the facts as set out therein in entire agreement with the facts of the case at bar. Here the payee in each instance was in fact an existing individual who had a claim against the assured of the Phoenix Indemnity Company. In each instance Smith was authorized and directed by the Phoenix Indemnity Company to issue the draft to the specific payee named. While it is true that when Smith carried out the direction of his company he did not intend to deliver the draft to the named payee, it is also true that he exercised no judgment or discretion as to who the payee should be and was only an instrument of his superior to carry out the purpose of the principal that the specific drafts should be executed to

the payees and delivered to them. Therefore Smith did not violate his instructions when he made the drafts payable to the payees therein named, but actually carried out his instructions. He did violate his instructions when he failed to deliver the drafts.

The court therefore reaches the conclusion that the payees named ██ in the drafts had an interest therein, and were not fictitious persons within the meaning of §8114, GC.

As to the second suggestion of counsel for the defendant that where one of two innocent parties must suffer, the loss shall fall upon the party who made the fraud possible, the court is not unmindful of the fact that Smith was the agent of the Phoenix Indemnity Company, and except for such agency this particular fraud could not have been perpetrated.

It is likewise true that Smith was a depositor of the defendant bank, and by reason of that fact defendant failed to exercise that caution and care which a bank should exercise in determining whether the signature of the payee of the draft was genuine or otherwise before placing its enforsement upon the draft, guaranteeing all prior endorsements. Thus when the drafts were finally presented to the home office of the Phoenix Indemnity Company, that company had the right to rely upon the guarantee of this defendant's endorsement. At the time Smith presented each draft to the defendant for payment he was not acting as agent or attorney for the Phoenix Indemnity Company, but as an individual depositor in defendant's bank.

Wherefore the court is of the ██ opinion that under the facts of this case the equitable doctrine contended for does not apply.

On the third contention of counsel for the defendant, the court is of the opinion that this question is disposed of by the decision of the court in the case of **Central Trust Company v Blackburn, 50 Oh Ap 512, 3 O.O. 546, (19 Abs 541)** the syllabus of which reads as follows:

"Plaintiff delivered a stock certificate to a brokerage firm to be used as collateral in margin operations. An agent of the firm, without knowledge or consent of the plaintiff, sold the certificate and obtained a check payable to plaintiff, forged plaintiff's name as endorser, then endorsed with his own signature and cashed the check at the defendant bank which obtained the amount from the drawee bank. In an action against the defendant bank. Held: Plaintiff may ratify the act of the agent in receiving the check as her agent and recover the amount thereof from the defendant bank."

Wherefore the court finds that the payees of the drafts in question were real persons who were asserting claims against the assured of the Phoenix Indemnity Company, and that this company intended to satisfy those claims, which ultimate- ly were a demand upon it; and that the secret intention of Smith to forge the names of the payees as endorsers does not operate to make such payees fictitious persons within the meaning of §8114, GC.

Therefore §8114, GC, under the facts in this case does not operate to make the drafts payable to bearer, and the defendant did not obtain title to such drafts upon the payment thereof to Harry Neal Smith; the payment made by the Phoenix Indemnity Company to The First National Bank of Cincinnati was made under a mistake of fact, and that under the subrogation agreement between the Hartford Accident & Indemnity Company, the plaintiff herein, and the Phoenix Indemnity Company, the plaintiff is entitled to judgment against the defendant in the sum of $1,994.45, as herein prayed for.