THE BUTLER PRODUCE & CANNING CO., APPELLANT, *v.*
EDGERTON STATE BANK, APPELLEE.

386

(No. 319—Decided April 14, 1952.)

*Messrs. Newcomer, Newcomer & Shaffer* and *Mr. Alphonso Wood,* for appellant.

*Messrs. Gebhard & Hogue* and *Mr. Fred Wolf,* for appellee.

FESS, J. This is an appeal on questions of law from a judgment entered on a verdict for the defendant.

Plaintiff corporation brings its action for recovery of the proceeds of three checks cashed by the defendant upon allegedly forged endorsements of the names of the payees thereof by one Earl L. Brant, an associate and employee of the plaintiff. One of the checks was made payable to the plaintiff and two of them were payable to the Blackford County Canning Company, a nonincorporated business owned and operated by one Jacob H. Walz, who was also treasurer of the plaintiff. Prior to the commencement of the action, Jacob H. Walz sold and assigned all the assets of the Blackford company to the plaintiff. The petition sets forth three separate causes of action, upon each of the three checks.

The first defense in the answer is a general denial.

The second defense alleges that the plaintiff and Jacob H. Walz gave to Earl L. Brant specific authority to endorse any and all checks of the Butler Produce & Canning Company and the Blackford County Canning Company; that Brant was employed to keep books, handle deposits, pay bills, draw checks, prepare tax returns and conduct other business of importance; that Walz and plaintiff, over many years, made available to Brant their unendorsed checks and permitted

him to endorse and cash them; that they permitted Brant to borrow funds in his individual name from defendant and others to cover overdrafts of Walz and plaintiff in the Knisely bank in Indiana; that by their conduct, Walz and plaintiff clothed Brant with apparent, if not actual, authority to endorse and cash the three checks; and that Walz and plaintiff are estopped and precluded from asserting the claims set forth in the petition.

For its third defense, defendant alleges that if there was any liability, the obligation of Brant was primary and that of the defendant secondary, and that plaintiff and Walz had entered into an agreement with Brant under the terms of which the parties agreed on the total amount of all claims owing by Brant and had accepted in satisfaction, compromise and settlement thereof promissory notes secured by mortgages. Defendant alleges further that such agreement is an accord and satisfaction and discharges defendant from any liability.

For its fourth defense, defendant says that the aforesaid agreement provided that an effort be made to determine the exact amount of the abstractions from Walz and the plaintiff and that the sum repaid by Brant be adjusted as between Walz and the plaintiff; that Brant has repaid $18,667.93, leaving a balance due Walz and plaintiff of $16,332.07 ($12,000 at time of trial); that such balance is secured by mortgages; and that such repayment and security should, in equity, be applied to discharge plaintiff's claims against the defendant. Defendant prays for dismissal of the petition "and for such other and further relief to which it in equity be entitled."

The reply was a general denial and an averment that the total amount abstracted by Brant was to be thereafter determined, and was not determined at the

time the agreement was executed since plaintiff had made no examination of the records for 1946, and that by reason of the fraudulent acts of Brant in failing to disclose the abstractions in 1946, set forth in the petition, the note and mortgage were given for the amount set forth therein.

Although Earl L. Brant was principally engaged in the insurance business, he was a part time employee and associate of the plaintiff and Jacob H. Walz. He had charge of the books of the two companies and the auditing of the accounts. Pursuant to authority from the owners, Brant deposited checks from customers in the Knisely National Bank at Butler, Indiana. The endorsement was made by a rubber stamp, made available for such purpose to Brant and a girl bookkeeper in the office, reciting:

"Pay The Knisely National Bank
of Butler, Indiana or order
"Butler Produce & Canning Company
Jacob H. Walz, Treasurer."

With respect to the Blackford company, a similar stamp was provided with the name "Blackford County Canning Company" instead of "Butler Produce & Canning Company."

In September 1946, Brant came into possession of a check dated September 24, 1946, in the sum of $1,574.34, payable to the Blackford company and, by another rubber stamp, stamped upon the back of the check "Blackford County Canning Co., By ....," and signed the name "Jacob H. Walz, Treas." thereon. Brant also came into possession of another check dated September 26, 1946, payable to the Blackford company, which he endorsed in like manner. Another check, dated September 30, 1946, in the sum of $1,-773.48, payable to the plaintiff, was endorsed by rubber stamp "Butler Produce & Canning Co., Inc., By ....," and the signing of "Jacob H. Walz, Treas." thereon.

The three checks were taken by Brant to the defendant bank, which apparently cashed them without requiring Brant's endorsement or making any inquiry as to his authority to endorse or negotiate the checks. The liability ledger sheet of the defendant bank discloses that on September 12, 1946, Brant owed the bank $6,500. Thereafter payments of $1,031.33 and $1,000 were made on the loan, reducing it, as of September 30th, to $4,468.67. Additional payments of $968.67 and $500 were made, reducing the loan as of October 1st to $3,000. No further entries appear until November 13th, when another payment of $1,000 was credited upon the account. Brant also maintained a checking account with the defendant bank, which reflects deposits of $100 on September 21st, and $870.45 on October 18, 1946. Midwest Brokerage Company, Jacob Walz and E. L. Brant, had a checking account which reflects deposits of $1,309.68 on September 30th, and $621.51 on October 1, 1946. It will be noted that the proceeds of the three checks can not be traced to either Brant's personal account or his liability account. The checks, however, bear the endorsement of the defendant bank and it necessarily follows that Brant received the proceeds in cash or by way of partial credit upon his indebtedness.

Butler Produce & Canning Company made a loan of $284.80 from the defendant bank in 1941, which was paid in September of that year, but was not otherwise a customer of the bank. Jacob Walz had a somewhat inactive checking account which was opened November 17, 1945, and closed on March 11, 1946. Blackford County Canning Company, Earl L. Brant and Jacob Walz made a loan of $1,500 on July 10, 1945, which was paid November 1, 1945.

There also appears in evidence a signature card at the Knisely National Bank at Butler, Indiana, upon the account of the Blackford County Canning Com-

pany upon which "Blackford County Canning Co. by ......" is typed (not stamped), and bearing the signatures "By—Dorothy Camp, Jacob H. Walz or E. L. Brant." It was also developed at the trial that checks dated November 15, 1945, payable to the Blackford Canning Company in the sums of $1,322.83 and $1,-322.84 were taken by the defendant endorsed by stamp "Blackford County Canning Co., By ....," and signed "Jacob H. Walz, Treas," and that on March 11, 1946, the defendant-bank cashed a check payable to "Cash—E. L. Brant" in the sum of $756.13 and signed "Jacob H. Walz, by E. L. Brant."

Although the three checks were negotiated by Brant in September 1946, the defalcation was not discovered until April 1950. Brant had fraudulently credited the payments received from the drawers of the checks upon the books of the two companies.

The evidence that Brant forged the endorsements upon the three checks is practically uncontradicted.

Section 8128, General Code, provides:

"When a signature is forged or made without authority of the person whose signature it purports to be, it is wholly inoperative. No right to retain the instrument, give a discharge therefor, or to enforce its payment against any party thereto, can be acquired through or under such signature, unless the party against whom it is sought to enforce such right is precluded from setting up the forgery or want of authority."

Although the statute makes no specific reference to the liability of an intermediate endorsee who collects the proceeds upon forged commercial paper, there is ample authority for the proposition that such endorsee is liable to the holder whose name has been forged as upon an action for money had and received.

"One acting on an indorsement must ascertain its genuineness at his own risk; and, where indorsement

is essential to recovery, there can be no recovery if it was forged. So forgery of the payee's name is a defense in a holder's action against the payee, maker, or drawer; and a payee whose name has been forged may in proper circumstances recover from the drawer, drawee, or *indorsee.*" (Italics supplied.) 10 Corpus Juris Secundum, 1087, citing *Buckley* v. *Second National Bank of Jersey City* (1871), 35 N. J. Law, 400, 10 Am. Rep., 249.

The payee whose endorsement has been forged may bring his action against an intermediate endorsee bank which has collected the proceeds of the check from the drawee bank. *Shaffer* v. *McKee,* 19 Ohio St., 526; *Central Trust Co.* v. *Backsman,* 50 Ohio App., 512, 198 N. E., 730.

Notwithstanding the language of the opinion in the *Backsman case,* the more cogent reasoning and authority support the theory that the action is *ex contractu* for money had and received rather than *ex delicto* for conversion. *Henderson* v. *Lincoln Rochester Trust Co.,* 303 N. Y., 27, 100 N. E. (2d), 117. See 31 A. L. R., 1068; 67 A. L. R., 1535.

But is the plaintiff "precluded from setting up the forgery or want of authority" of Brant to endorse the check? As between a drawer-depositor and a drawee-depository bank, the doctrine of "two innocent persons" is frequently applied to estop the drawer whose name has been forged from asserting the forgery. *Weisberger Co.* v. *Barberton Savings Bank Co.,* 84 Ohio St., 21, 95 N. E., 379, 34 L. R. A. (N. S.), 1100; *Jones* v. *Peoples Bank,* 95 Ohio St., 253, 116 N. E., 34; *Hillside Dairy Co.* v. *Cleveland Trust Co.,* 142 Ohio St., 507, 53 N. E. (2d), 499.

Recovery by a depositor against a bank upon checks deposited in his personal account by the general manager of the depositor has also been denied upon the ground of negligence. *Portsmouth Clay Products* v.

*National Bank of Portsmouth,* 78 Ohio App., 271, 69 N. E. (2d), 653.

Upon reason and authority, the same principle should be applied as between the payee of a check whose signature has been forged and an intermediate endorsee bank which has taken such forged check. But as between a drawer whose name has been forged and the drawee bank, the circumstances creating an estoppel precluding the drawer from asserting the forgery are more likely to arise than in the case where an intermediate endorsee cashes a check upon the forged endorsement of the payee. For example, in the instant case the payee did nothing which would clothe Brant with any indicia of authority to endorse the checks or to receive the proceeds thereof other than to permit the checks to come into Brant's possession. In order to charge the payee of the checks with responsibility under the "one of two innocent persons rule," the acts of the payee must in some way contribute to cause the endorsee to pay to a person other than the actual payee of such check or a person not duly authorized by the actual payee to receive payment. *Hockett Co.* v. *Simmonds,* 84 Ohio App., 467, 87 N. E. (2d), 739. In *Fourth & Central Trust Co. of Cincinnati* v. *Johnson,* 24 Ohio App., 129, the court holds that in an action to recover a bank deposit paid by the bank under forged checks of the depositor's bookkeeper, where the evidence did not show duty and opportunity to speak by the depositor or reliance of the bank on his silence and injury resulting thereby, the depositor was not estopped from defending against the payment of the forged checks.

In *Lavanier* v. *Cosmopolitan Bank & Trust Co.,* 36 Ohio App., 285, 173 N. E., 216, it is held that drawee bank's payment on a check being a nullity if endorsement was forged, the drawer's right to his deposit remained unaffected; hence, the drawer could not re-

cover against the intermediate cashing bank, because the drawer's money was still in the drawee bank. This decision is contrary to the greater weight of authority which, in the interest of avoiding a multiplicity of suits, permits the payee of a check whose endorsement has been forged to recover against the intermediate endorsee. 31 A. L. R., 1068; 67 A. L. R., 1535; *Henderson* v. *Lincoln Rochester Trust Co., supra.* Avoidance of a multiplicity of suits is recognized by implication in the reference to plaintiff's argument in a footnote in *Shaffer* v. *McKee, supra.* In *Provident Savings Bank & Trust Co.* v. *Western & Southern Life Ins. Co.,* 41 Ohio App., 261, 179 N. E., 815, the court reaffirmed the *Johnson case,* but also held that in an action against the drawee bank for the amount paid on checks forged by a depositor's agent, negligence alone on the part of the depositor is no defense, but it must be such negligence as is the proximate cause of the bank's action in paying the forged checks—acts constituting negligence upon which the bank relied to its damage. *Provident Bank & Trust Co.* v. *Fifth-Third Union Tr. Co.,* 43 Ohio App., 533, 183 N. E., 885, and *Planters Bank & Trust Co. of Richmond* v. *Fifth-Third Union Tr. Co.,* 56 Ohio App., 309, 10 N. E. (2d), 935, illustrate the technical ramifications and confusion which arise as between banks incident to the transfer of forged negotiable instruments upon the theory that the drawee bank alone is liable.

In *Pyper* v. *Climer,* 29 Ohio App., 486, the payee of a check delivered it unendorsed to his agent with instructions to deposit it as security for the rental of an airplane. The agent forged the payee's name and it was cashed by the plaintiff as the intermediate endorsee. The court held that under the facts and circumstances the payee was, by his conduct, precluded from setting up the defense of forgery, upon authority of *Weisberger Co.* v. *Barberton Savings Bank, supra,*

thereby applying the "one of two innocent persons" rule. The *Weisberger* and *Pyper cases* ignore the fundamental principle that one who acts upon the endorsement of negotiable paper does so at his peril; that a forgery is void; and that no right can be acquired through a forgery unless the payee by his conduct "is precluded from setting up the forgery or want of authority." Mere possession of an unendorsed check does not clothe the possessor with apparent authority to negotiate it. On the contrary, the apparent authority is created by the forgery and the one cashing it is relying on the forgery itself and not upon any act or conduct of the payee. The same court which decided the *Pyper case* in 1928 in the recent case of *Hockett Co.* v. *Simmons, supra,* holds that under the "one of two innocent persons rule" the act of the drawer must in some way contribute to cause the payer to pay to a person other than the actual payee of a check, or a person not duly authorized by the actual payee to receive payment.

There is no evidence in this case from which it may be inferred that the defendant bank relied upon any conduct of the plaintiff or Walz which would lead it to believe that Brant had authority to negotiate the checks, except that indicating that he was allowed to have possession of the checks for deposit. It was the duty of the bank to ascertain the extent of Brant's authority. Instead, it relied upon the forged endorsements of the payees' names. Mere possession of the check with the forged endorsements was insufficient to clothe Brant with any indicia of authority attributable to the payees.

Upon this aspect of the case, we therefore conclude that the evidence tending to show that Walz and plaintiff permitted the unendorsed checks to come into Brant's possession did not preclude plaintiff from

setting up the forgery. However, upon the issue of forgery we are of the opinion that the trial judge should have submitted to the jury the issue of fact as to whether Walz and the plaintiff authorized Brant to negotiate the checks and if they found that Brant was so authorized, that its verdict should be for the defendant; that, on the other hand, if it found that Brant was not so authorized to negotiate the checks, its verdict should be for the plaintiff.

With respect to the defense of accord and satisfaction, there is considerable doubt whether, under the circumstances, the liability of Brant was primary and that of the bank secondary. Ordinarily, upon discovery of the forgery, the drawee bank would pay the amounts of the checks to the payee and then in turn be reimbursed by the prior endorsers in the order of their several endorsements. And in the instant case the defendant bank would reimburse the bank to which it negotiated the checks, and in turn would have the right to proceed against the forger for the loss thus sustained. Upon discovery of the forgery, the bank would no doubt have the right to pursue the forger, even before it would be called upon to repay the amount to its endorsee.

But in the instant case the defendant, as the collecting bank, acquired no title to the checks on the forged endorsement because the endorsement, its only source of title, is a nullity. It, therefore, is wrongfully in possession of the check, and upon equitable principles holds it for the payee. While in possession of the forged check, the bank, by means of the forged endorsement, collected the check and thereby holds the proceeds of the collection for the payee. Such circumstances are said to create a privity between the bank and the payee, and if the payee elects to ratify the collection of the proceeds for his benefit by the collecting bank, the payee may recover from it the

amount collected. *National Union Bank* v. *Miller Rub-ber Co.,* 148 Md., 449, 129 A., 688, 690; 9 Corpus Juris Secundum, 763.

The payee no doubt has a right of action against the forger to recover the amount of his defalcation. The bank also has a right of action against the forger on account of the criminal fraud practiced by him. But it is exceedingly difficult to perceive a situation of primary and secondary liability as between the bank and the forger. Of course, the plaintiff may have but one recovery and any payment which it might receive from the forger would reduce the amount of its recovery from the bank, and the bank in turn would be entitled to recover from the forger the amount of the judgment against it.

With these considerations, it would appear that if the forger repays the whole amount of the checks to the payee, the latter would have no further right of recovery against the endorsee bank. Likewise, if the payee makes a complete settlement with the forger and thereby releases him from any further obligation, an accord and satisfaction would result which would redound to the benefit of the bank.

The agreement upon which defendant relies as an accord and satisfaction was made September 27, 1949, between Brant, the plaintiff, and Jacob H. Walz. In the preamble, it is recited that over a period of years Brant had been employed in keeping books and records, handling deposits, paying bills and drawing checks for the Butler and Blackford companies; that investigation had disclosed shortages in both concerns in amounts then undetermined; and that Brant admits embezzlement of funds from both companies and fixes the amount at $35,000, but is unable to state how much had been taken from each company, "and whereas the said Earl L. Brant has promised to pay said abstraction

in such amount as may be determined and in compliance with this agreement'' has paid $8,119.85 in payment of liabilities of Blackford company and $2,-548.08 of Butler company. The preamble recites further that Butler and Blackford contend that the abstractions were in excess of $35,000. Thereupon the agreement itself recites that Brant admits abstractions in the sum of $35,000, and agrees to pay such sum to the two companies ."as soon as he can raise said amount, but in no event to exceed a period of six months, unless the balance remaining unpaid'' at the end of six months is secured to the satisfaction of the two companies. It was also agreed that Brant had paid the $8,119.85 and $2,548.08 which should be credited upon the admitted sum of $35,000, leaving a balance due of $24,332.07 to be represented by a note for $4,-332.07 due December 31, 1949, and one for $20,000 due within one year, with interest at 5 per cent. Brant agreed further to secure the notes by a mortgage on his farm, subject to an existing first mortgage of $2,000, and a chattel mortgage on live stock and machinery. Butler and Blackford agreed that payments received should be allocated as nearly as possible between the two companies so as to restore the companies to the same relative position as before the defalcations. ''Any eventual loss that may be sustained after recoveries have been made and applied shall be sustained pro rata by the two companies in proportion to the amount of loss of each of said companies.'' Butler and Blackford also agreed that if $8,000 was paid upon the $20,000 note before maturity, they would extend the balance of $12,000 for an additional period of one year. It is obvious from the terms of the agreement that one of its primary objects was to attempt to adjust the defalcations as between the two companies.

No specific provision that Brant was to be released from his obligations to the companies upon the payment of the $35,000 was made in the agreement.

On February 20, 1950, a further agreement was made acknowledging that Brant was entitled to credits aggregating $8,000 on his $20,000 note and reciting that the credits had been arrived at as compromises and are to be considered in full payment of any and all debts due Brant from Butler and Blackford up to December 31, 1949 (with a minor exception).

Plaintiff's evidence (which was erroneously excluded) tends to show that the loss on the three checks was not discovered until April of 1950.

At the time of trial, the $4,332.07 note had been paid, and the balance due upon the $20,000 note was $12,000, which had been reduced to judgment in an action to foreclose the mortgage. Plaintiff's evidence that the value of the farm securing the mortgage was $9,000 was excluded upon objection. Evidence tendered by plaintiff in rebuttal to show the circumstances surrounding the execution of the agreement was erroneously excluded upon objection. Evidence that the three checks in controversy were not discovered until April 1950, and that it was later discovered that Brant had embezzled approximately $70,000, was also erroneously excluded upon objection of the defendant.

Whether the agreement constituted an accord and satisfaction was in dispute. Since it did not recite in specific terms that the $35,000 was in full payment of Brant's obligations to Butler and Blackford and did not in specific terms release Brant upon his payment of such sum, the burden was upon the defendant to show dehors the written agreement that the parties thereto intended it to be a full and complete settlement. *Morton* v. *Siebler Clothing Co.*, 21 Ohio App., 393, 153 N. E., 227; *Warner Elevator Mfg. Co.* v.

*Higbee,* 53 Ohio App., 546, 5 N. E. (2d), 947. This it failed to do. In *Leach* v. *Church, Admr.,* 15 Ohio St., 169, citing *Merrick* v. *Boury & Sons,* 4 Ohio St., 60, the Supreme Court held that a note of a surviving member of a firm, given by him to the creditor of the firm on an adjustment of such creditor's claim against the firm, will not be regarded as given and received in satisfaction of the firm debt unless the testimony affirmatively and clearly shows such to have been the agreement of the parties. In *Steward* v. *Evatt, Tax Commr.,* 143 Ohio St., 547, 56 N. E. (2d), 159, the Supreme Court held that payment of an obligation ordinarily must be made in money, although other things, such as negotiable paper, may be accepted by a creditor, but such acceptance does not constitute payment or satisfaction of the debt in the absence of an express or implied agreement that it shall be so considered. In that case, as in the instant case, there was nothing to indicate that the note was either delivered or accepted with an intention that it be regarded as payment or satisfaction.

It is therefore concluded that plaintiff's motion to withdraw from the consideration of the jury the third and fourth defenses of the answer should have been granted and that the failure to do so was prejudicial to the plaintiff. The parties apparently acquiesced in having the equitable issues raised by the fourth defense tried to the jury, and any error in failing to have such issues tried to the court falls because of the failure to prove the so-called accord and satisfaction.

Considerable evidence was introduced tending to show Brant's participation in the business affairs of the two companies. This evidence was admissible for the limited purpose of supporting the allegation in the second defense that Walz and the plaintiff clothed Brant with authority to cash checks. That portion

of the defense alleging that they clothed Brant with "apparent authority" should have been withdrawn from the jury, since there was no evidence that the defendant bank had knowledge of any apparent authority on the part of Brant to negotiate the checks. From this evidence of Brant's participation in the affairs of the companies, reasonable minds might differ as to whether Brant had authority to cash the checks at the defendant bank. If he had such authority, there would be no forgery. The inference to be drawn from such evidence is very slight, but possibly more than a scintilla, which would require the submission of the issues of forgery to the jury under appropriate instructions.

By reason of a misconception on the part of the court as well as counsel of the issues raised under the pleadings, many errors prejudicial to the plaintiff occurred during the trial in the admission and exclusion of evidence and in the charge of the court. All errors referred to in appellant's brief are sustained except as indicated in the following paragraph.

Plaintiff requested the court to submit six forms of verdict—two for each cause of action. The refusal of this request was within the sound discretion of the court. Refusal of plaintiff's requests to charge was not erroneous. Evidence relating to transactions with the Knisely bank so far as it tended to show the authority conferred upon Brant was also admissible for that limited purpose, but not for the purpose of showing "apparent" authority.

The judgment is reversed and cause remanded for a new trial.

*Judgment reversed.*

Conn and Savord, JJ., concur.