## NATIONAL BANK OF THE REPUBLIC v. OLD TOWN BANK OF BALTIMORE.

(Circuit Court of Appeals, Seventh Circuit.    January 7, 1902.)

No. 786.

1. AGENCY—AUTHORITY OF AGENT.

The implied powers and authority of an agent employed for a particular service depend largely upon the circumstances in each case, and upon what is necessary or reasonable to enable him to effect the purpose of his agency.

2. ATTORNEYS—AUTHORITY TO COLLECT MONEY—INDORSEMENT OF CHECKS.

An attorney employed by a number of legatees and heirs of an estate, who resided in several different states, to act for them in the settlement of the estate, and authorized to collect and receive their shares, retained to assist him a law firm in the city where the estate was being administered, and agreed with such firm on the fee to be charged, and its division. On settlement of the estate he procured from his clients receipts for their respective shares, and forwarded them to the firm, which collected the m.ney, and, after deducting the fee, sent him checks for the remainder, each made payable to one of the distributees, and covering the amount of his or her share. *Held*, that the attorney, being responsible to his clients for the money collected, and being the only person authorized by them to receive it, had authority as their attorney to indorse the checks for collection, and to collect the same; that, having made such indorsement and collected the checks through a bank which paid the proceeds to him, it was not within the power of the firm, which was merely his subagent, without privity with his clients, by objecting to the indorsements to repudiate the payment of the checks by the bank on which they were drawn, and create a claim in its favor against the collecting bank to recover the amount paid thereon.

In Error to the Circuit Court of the United States for the Northern District of Illinois.

Charles H. Horn and Wilson S. Horn, of the state of Ohio, J. M. C. Horn, of the state of Washington, Clatonia Wright, of the state of Minnesota, and Mrs. Sidney K. Swander, of the state of Illinois, were each made legatees under the will of Joseph Horn, of Baltimore, in the state of Maryland; and each was also entitled, as heir at law, to share in the distribution of the estate. These legatees and distributees employed one W. J. Fairman, an attorney at law in the city of Chicago, to represent them in any proceeding in the administration and settlement of the estate, and to receive from the executors the amount coming to them as distributees. Fairman retained the law firm of Elliott & Hoffman, of Baltimore, to assist in procuring the settlement of the estate. In the year 1896 the executors paid to Elliott & Hoffman certain specific legacies, which were remitted to Fairman, and by him paid to the persons entitled. Litigation arose affecting the estate, respecting claims and demands filed against it, in which Elliott & Hoffman and Fairman defended the interests of the parties named; the former not being in direct communication with the clients of Fairman, but corresponding with them in reference to all matters connected with the litigation and the estate. In the month of March, 1898, the estate being ripe for distribution, the executors required receipts from the distributees for their shares, respectively; and Fairman procured from his clients such receipts, forwarded them to Elliott & Hoffman, who delivered them to the executors, and received from them the amount of the distributive shares. Fairman had agreed with Elliott & Hoffman that they should charge 10 per cent. of the amount collected for their services, and that Elliott & Hoffman should retain two-thirds of the fee. In March, 1898, Elliott & Hoffman received from the executors the amount coming to each of the distributees

named, deducted from the total amount the fee charged, drew their checks on the National Mechanics' Bank of Baltimore to W. J. Fairman for his one-third of the 10 per cent., and drew their five checks, each for the sum of $605.61, and payable, respectively, to the order of the distributee entitled thereto, and forwarded the checks to Fairman, who indorsed them, respectively, in the name of his client, "By W. J. Fairman, Attorney,—W. J. Fairman," and deposited them with the National Bank of the Republic of Chicago to his credit on account. This bank in due course of business forwarded them for collection to the Old Town Bank of Baltimore, by which they were presented through the Baltimore clearing house to the National Mechanics' Bank, upon which they were drawn, and were paid by that bank; the amount being credited by the Old Town Bank to the account of the National Bank of the Republic. On or about April 1, 1898, all of these checks were delivered by the National Mechanics' Bank to Elliott & Hoffman, who at the time made no objection to the indorsements of any of the checks, but afterwards, on the 9th of May, 1898, being informed that Fairman had not settled with and paid to his clients the amount so collected by him, except as to the amount due Mrs. Sidney K. Swander, returned to the National Mechanics' Bank the four checks for $605.61 each, with the statement that the indorsements thereon were not satisfactory to them; and thereupon that bank delivered the checks to the Old Town Bank, and demanded and received from it the amount, and the latter bank afterwards brought this suit to recover the amount so paid. Fairman from time to time checked on the National Bank of the Republic, and drew out the whole amount of these checks, prior to any notice to that bank of the claim of Elliott & Hoffman that the indorsements were irregular. Subsequently Fairman, after repeated demand, paid to each of the four unpaid legatees the sum of $125, amounting in all to $500, which was paid out of the moneys received by him upon the checks forwarded by Elliott & Hoffman. Fairman had no express authority to indorse any of the checks, aside from such authority as may have been vested in him by virtue of his employment as stated; and the payees, except as may be inferred from the facts stated, never subsequently ratified the indorsements, or received any benefit of them, except to the extent of their respective shares of the $500 paid by Fairman. The facts stated were stipulated by the parties, and, upon a trial by the court without a jury, judgment for the defendant below was asked and refused, and judgment was rendered for the plaintiff below, the Old Town Bank of Baltimore, to review which a writ of error is sued out.

Herbert Z. Davis, for plaintiff in error.

Arthur G. Waite, for defendant in error.

Before JENKINS and GROSSCUP, Circuit Judges, and BUNN, District Judge.

JENKINS, Circuit Judge, after stating the facts as above, delivered the opinion of the court.

The authority to collect and to receive from the executors the amount coming to the distributees included all the usual means of executing that authority with effect (Story, Ag. § 58), and all appropriate modes and reasonable modes are deemed to be within the scope of the authority conferred (Leroy v. Beard, 8 How. 451, 468, 12 L. Ed. 1151). The authority is limited to the particular subject, but should be construed to effectuate the design and object. The authority of an attorney in the course of a litigation and in the prosecution and collection of claims has been often considered, but the courts have not at all times been at agreement. Hogg v. Snaith, 1 Taunt. 347; Howard v. Baillie, 2 H. Bl. 618; Merrick v. Wagner, 44 Ill. 266; Robinson v. Bank, 86 N. Y. 404; Jackson v. Bank, 92 Tenn. 154, 20 S. W. 820, 18 L. R. A. 663, 36 Am. St. Rep. 81; Harbach

v. Colvin, 73 Iowa, 638, 35 N. W. 663; Levy v. Brown, 56 Miss. 83; Maxwell v. Owen, 7 Cold. 630; Clark v. Randall, 9 Wis. 135, 76 Am. Dec. 252; Sherrill v. Clothing Co., 114 N. C. 436, 19 S. E. 365. There appears a tendency to relax the strict limitation of implied authority to meet the necessity of prompt action in modern business methods, particularly when client and attorney are at considerable distance from each other. After all, the question of authority must depend, as Mr. Mechem observes, largely upon circumstances; and "authority to do a given act carries with it an implied authority to do those things which are necessary in order to accomplish the main end, and what is necessary must be determined in many cases by reference to the particular facts." Mechem, Ag. § 816. In the case at bar, Fairman, the attorney of the legatees, alone was authorized to receive from the executors the amount coming to the distributees. It was also his duty to take only money in payment of the claims. Garvin v. Lowry, 7 Smedes & M. 24. Elliott & Hoffman were engaged by Fairman to assist in the prosecution and collection of the claims. They were subagents, without privity with Fairman's clients. They were agents of the agent only. Mechem, Ag. § 197. They were subordinates, not substitutes. They were responsible to Fairman, not to his principals. He was responsible to his clients for the conduct of his subordinates, and for all moneys which should come to their hands. Their duty was fulfilled, their liability discharged, when they had paid to Fairman the moneys collected by them as the fruit of the litigation. They had no warrant to constitute themselves the guardian of Fairman's clients, or to volunteer protection to them against their chosen counsel, if, indeed, they had any such purpose. They drew their checks upon their bank for the amount collected, less the fee for service, which had been agreed upon with Fairman, but not with his clients. It was Fairman's duty to account to his principals as well for the amount collected as for the fee exacted. If he could not sustain the reasonableness of that fee, he was liable to respond to his principals. He, not Elliott & Hoffman, took the risk of the arrangement he had made with the latter. It was their duty to pay to Fairman the amount collected. The checks drawn did not constitute payment. They were but a convenient mode of making payment. Elliott & Hoffman could not rightfully curtail the authority of Fairman to receive in money the fruits of the litigation, since he had been thereto fully authorized by his clients, with whom Elliott & Hoffman had no privity. Indeed, we are inclined to believe that Elliott & Hoffman did not design to limit, if they could, Fairman's authority; that these checks were drawn to the order of the distributees, respectively, merely to indicate the division of the fund among them, and in the expectation that Fairman would himself collect and distribute the money. Otherwise they would at once upon receipt of the checks from their bank have objected to the manner of the indorsement. They rested without objection for an entire month after return of the checks to them, objecting for the first time upon ascertaining that Fairman had defaulted in his duty to his clients, and then only upon the ground that the indorsements were not satis-

factory, not that the indorsements were beyond the authority of Fairman. His check to the order of Swander was not returned or objected to, although similarly indorsed; and this, doubtless, because Fairman had accounted for the amount to his client. The subsequent proceedings against Fairman, successful in part, were instituted in behalf of his defrauded clients by the same attorneys who represent the Old Town Bank in this suit. These facts lend color to the suggestion that Elliott & Hoffman's late objections and return of the checks were not because the indorsements were unauthorized and were not approved by them at the time, but were made to forward the interests of Fairman's clients against the National Bank of the Republic, and that this suit, under some understanding and arrangement, is in fact prosecuted in the interest of those clients. However that may be, we are of the opinion that, under the peculiar facts disclosed, Fairman was authorized to collect this money, and for that purpose to execute these indorsements upon the check. His clients were scattered, some of them in distant states. He was responsible to them for the money which Elliott & Hoffman had collected. The checks were not payment to him of that amount. They were but a convenient mode or means of remitting to him the money collected. If for any reason the checks should fail of honor, his responsibility to his clients remained, and could not be discharged except by the actual payment of money to them. We do not mean to say that the implied authority of an attorney authorizes an indorsement of his client's name in such way as to bind the client as an indorser, but that, under the circumstances of this case, Fairman was authorized to collect the money of his clients, and for that purpose to make these indorsements as a proper means to that end. The indorsement was availing to protect the drawer of the check, and that is sufficient. It was ruled in Brown v. Donnell, 49 Me. 421, 77 Am. Dec. 266, that the agent of a corporation may have authority to transfer a note by indorsement, but no authority to bind the corporation as indorser of it; remarking that in like cases the distinction is often overlooked between the authority to bind one by a contract of indorsement, and the authority to transfer property by an indorsement.

The judgment is reversed, and as the cause was tried below upon stipulated facts, and upon those facts, as matter of law, we are of opinion that there can be no recovery, the cause is remanded, with a direction to the court below, upon the facts stipulated, to render judgment for the defendant below.