## CENTRAL TRUST CO v HAHN-JACOBSEN CO, INC

Ohio Appeals, 1st Dist, Hamilton Co

Decided Dec 16, 1935

Robert A. Black, Cincinnati, for plaintiff in error.

Ralph L. Hinds, Cincinnati, for defendant in error.

## OPINION

By ROSS, PJ.

There are certain outstanding facts and conclusions apparent from the foregoing statement.

Peters was employed to collect the amount due plaintiff from the insurance company in New York. Payment of this debt was made to the duly accredited agent of the plaintiff. Peters received payment of the account and his estate is responsible therefor.

This is not such a case as was developed in **Central Trust Co. v Backsman, 3 OO 546, (198 NE 730; 50 Oh Ap 512; 19 Abs 541)** for there payment was made by the bank to a person not the agent of the drawee. The drawer of the check indebted to the plaintiff was fully justified in transmitting same to the attorney for plaintiff. Such payment if made in cash would have been a payment certainly. However, solely because the attorney was not authorized specifically to indorse plaintiff's name upon the check, it is asserted that the indorsement has been forged. If the endorse-

ment was a forgery in the true sense of the term, then the check has never been paid and the money is still in the drawee bank and the debtor still owes the original debt.

Now it would seem that from what has been said that there has been no forgery of the indorsement of plaintiff, and that plaintiff should not be permitted to recover from the bank. That there is respectable authority for this conclusion is apparent from the citations and quotations immediately following.

In the case of Bailey v United States, 13 Fed. (2nd) 325, an attorney employed to collect a claim against the United States indorsed his client's name on a draft payable to his client alone. The attorney had no express authority to do this. On page 326 of the opinion the court say:

"If, therefore, express authority was needed, the question whether the plaintiff in error was vested with such authority, or honestly though mistakenly, believed that he had such authority, was for the jury. On the other hand, if the plaintiff in error had implied authority to indorse the check or draft arising out of his employment, there was no forgery of the indorsement, no uttering or publishing of the forged indorsement, and no offense against the laws of the United States, whatever crime may have been committed against the laws of the state.

"We think the latter view is the correct one. The plaintiff in error was employed as an attorney to collect certain claims against the government; he had undoubtedly authority to receive payment in cash or money, and, having received instead a check payable to his client, under the great weight of authority he had implied authority to indorse and cash the check. Thus, In Re Brashear (D. C.) 275 F. 481, a dividend check was issued on the depository by a trustee in bankruptcy, countersigned by the referee, and made payable to the creditor, and it was held that an indorsement of the check by the attorney for the creditor in the name of the creditor constituted an acquittance by the creditor to the trustee in bankruptcy and to the depository.

"In Brown v Grimes, 74 Ind. App. 655, 129 NE 483, the court said: 'It is a well-established rule of law that an attorney who has a claim for collection has no right, in the absence of special authority, to accept in settlement anything but money. This rule is made in law in this state by statutory enactment. * * * Under this rule,' appellant's said attorney had no authority

to receive the check as payment, nor could he by his indorsement impose a new contract liability upon appellant, who was his client; but, having taken the check in due course of his employment, he had implied authority to make a formal indorsement in behalf of his client for the purpose of making the collection and receiving the money. Having by indorsement of the check received the money thereon. Underwood had by this means effected the purpose for which he had been employed. He had collected, and had in his possession for appellant, in money, the full amount of the judgment he had been employed to collect. We therefore hold that the acceptance and indorsement of the check by appellant's attorney, and the receipt by said attorney of the proceeds of such check, under the peculiar facts of this case, amounted to a payment of the judgment. The conclusion we have reached is in accordance with the great weight of authority'—citing many cases. See, also, National Bank v Old Town Bank, 112 F. 726, 50 C.C.A. 443; National Fire Ins. Co. v Eastern Building & Loan Assn., 63 Neb. 698; 88 NW 863.

"Should a suit be instituted against the government to recover the amount of the check or draft, we have little doubt that the paid check or draft, indorsed as it is, would constitute a full and complete defense."

In commenting on this opinion, the court in United States v Prussian, 42 Fed. (2nd) 854, 856, say:

"The indorsement was without authority. The second power of attorney expressly prohibited such indorsement, and it is of no importance that the first was more general or did not prohibit in express words such indorsement. Bailey v United States, 13 F. (2d) 325 (C.C.A. 9), is relied upon by the appellant, but it is distinguishable. There it was held there was no testimony showing that the defendant's authority was in any way specifically restricted under his general authority as attorney at law retained to collect a claim. He had authority to receive cash in payment of the claim, and he had the implied authority to indorse and cash the check. At bar, there was a studied effort to imitate Malcolm S. Mackay's handwriting, as a comparison of this with his own admitted handwriting shows. Malcolm S. Mackay's name was signed in a small regular handwriting, and appellant's name was signed in a large flowing handwriting, showing his habitual signature. It points out by these different signatures, an effort to deceive. To be sure,

the appellant made explanation as to this, but the jury apparently decided against it."

In National Bank v Old Town Bank, 112 Fed., 726, 728, the court say:

"There appears a tendency to relax the strict limitation of implied authority to meet the necessity of prompt action in modern business methods, particularly when client and attorney are at considerable distance from each other. After all, the question of authority must depend, as Mr. Mechem observes, largely upon circumstances; and 'authority to do a given act carries with it an implied authority to do those things which are necessary in order to accomplish the main end, and what is necessary must be determined in many cases by reference to the particular facts.' Mechem, Ag., §816. In the case at bar, Fairman, the attorney of the legatees, alone was authorized to receive from the executors the amount coming to the distributees. It was also his duty to take only money in payment of the claims."

The second paragraph of the syllabus of this case is:

"An attorney employed by a number of legatees and heirs of an estate, who resided in several different states, to act for them in the settlement of the estate, and authorized to collect and receive their shares, retained to assist him in a law firm in the city where the estate was being administered, and agreed with such firm on the fee to be charged, and its division. On settlement of the estate he procured from his clients receipts for their respective shares, and forwarded them to the firm, which collected the money, and, after deducting the fee, sent him checks for the remainder, each made payable to one of the distributees, and covering the amount of his or her share. Held, that the attorney, being responsible to his clients for the money collected, and being the only person authorized by them to receive it, had authority as their attorney to indorse the checks for collection, and to collect the same; that, having made such indorsement and collected the checks through a bank which paid the proceeds to him. it was not within the power of the firm, which was merely his sub-agent, without privity with his clients, by objecting to the indorsements to repudiate the payment of the checks by the bank on which they were drawn, and create a claim in its favor against the collecting bank to recover the amount paid thereon."

The second paragraph of the syllabus in Brown v Grimes et, 74 Ind. App., 655, is:

"An attorney has no authority to receive a check as payment of the judgment entrusted to him for collection, nor could he by his indorsement impose a new contractual liability upon his client, but where he took the check in due course of his employment, he had implied authority to make a formal indorsement in behalf of his client for the purpose of making collection and receiving the money, and, having by indorsement received the money thereon, he effected the purpose for which he had been employed, and the receipt by the attorney of the check amounted to payment of the judgment."

See also, Bailey v United States, quoted supra.

Another case relied upon to sustain the right of an agent to indorse is Arcade Realty Co. v Bank of Commerce, 180 Cal. 318. A reading of this case, however shows that it is predicated upon estoppel and that there were sufficient facts justifying a finding that the drawee had acted in such a manner as to warrant a conclusion that this defense was proved. The case is really an authority for the principle that no implied authority exists in an agent to indorse negotiable instruments payable to his principal, although received in payments of accounts placed in the agent's hands for collection. The 1st, 2nd, 3rd, and 4th paragraphs of the syllabus in Arcade Realty Co. v Bank, supra, are:

"1. Authority to collect rents does not imply authority to indorse negotiable paper in payment.

"2. The authority of an agent to indorse negotiable paper is a very responsible power not lightly to be presumed or implied.

"3. The power of an agent to indorse commercial paper for his principal must be a necessary implication from an express authority conferred upon such agent.

"4. When an agent had authority to deposit all rents collected by him in his personal account, for the purpose of remitting the same to his principal by his personal check, such authority carried with it the power essential to that course of business, namely, the indorsement for deposit of checks made payable to the principle where such were collected."

Before proceeding to state the rule supported by the great weight of authority, it is proper to observe the statute in Ohio,

a part of the Negotiable Instruments Law, §8128, GC:

"When a signature is forged or made without authority of the person whose signature it purports to be, it is wholly inoperative. No right to retain the instrument, give a discharge therefor, or to enforce its payment against any party thereto, can be acquired through or under such signature, unless the party against whom it is sought to enforce such right is precluded from setting up the forgery or want of authority."

It will be noticed that the statute not only applies to cases of absolute forgery but to cases where the indorsement is without authority.

It has been suggested that the case of **Workman v Wright, 33 Oh St, 405,** prevents recovery in the instant case. The second paragraph of the syllabus in that case is:

"The principle of agency, by which a principal may ratify the unauthorized act of his agent, does not apply to the alleged ratification of a forged note; the act of the agent being voidable, may be ratified; the act of the forger is void, and can not be ratified."

However, as pointed out by this court in the case of Central Trust v Backsman, supra, while the forgery may not be ratified, the payee may, nevertheless, hold the bank paying out the proceeds of a check upon a forged indorsement. The act of the agent, in this case, the attorney Peters, in placing in the possession of the bank a check, the property of the payee, may be ratified, and the act of the bank in collecting the plaintiff's money (the payee's) from the drawee bank may be ratified. The forgery is specifically unratified.

The great weight of authority is to the effect that an agent or attorney employed to collect an account for a principal or client has no implied authority to indorse the principal's or client's name upon a check received by the agent or attorney in satisfaction of the obligation which he is employed to collect. The cases supporting this view are collected in 12 A.L.R., pages 92 to 144. See particularly Note 120.

To the same effect is Crahe v Mercantile Trust & Savings Bank, 295 Ill. 375, 12 A. L.R., 92, the first paragraph of the syllabus of which is:

"Under the Negotiable Instrument Act, if an instrument is payable to the order of two or more payees who are not partners all must indorse unless the one indorsing has authority to indorse for the others."

Also:

"Authority to collect rents does not imply authority to indorse negotiable paper received in payment." Arcade Realty Co. v Bank of Commerce, 180 Cal., 318, par. 1, syllabus, 12 A.L.R. 102.

"Authority to indorse checks payable to a fruit company is not conferred by a statement certifying that the agent was authorized to 'transact any and all business' for the company, in the absence of any circumstances touching the nature of the business from which the power might be implied." Coleman v Seattle National Bank, 109 Wash., 80, syllabus, 12 A.L.R. 108.

"Plaintiff was entitled to recover from the defendant, a bank, which paid to her attorney and agent for collection a draft, executed to plaintiff as payee, indorsed by her attorney by forging plaintiff's signature and indorsing his own thereunder, unless she was rightly held to be estopped from enforcing her demand by laches." Brown v People's National Bank, 170 Mich. 415, paragraph 1, syllabus.

"An attorney employed to prosecute a suit to judgment has no implied authority to indorse the client's name on a check payable to her order in satisfaction of the judgment." Crahe v Mercantile Trust & Savings Bank, supra, paragraph 2, syllabus.

In United States v Sloat, 56 Fed. (2d) 434, the 3rd, 4th and 5th paragraphs of the syllabus are:

"Where attorney is not appearing in court for party but is transacting business involving agency, right to indorse checks must be governed by terms of employment.

"Except under extraordinary circumstances, attorney cannot indorse client's name on check without indication that he does it as attorney.

"Attorney representing client in settling estate held, in prosecution for forgery, not authorized to indorse client's name on check."

It is obvious from an examination of the authorities that the principal or client may be estopped to deny his agent's or attorney's authority to indorse by a course of action which has led strangers to believe that the agent or attorney possessed authority to indorse papers placed in his hands.

This is well stated in the A.L.R. note, supra, page 112:

"A distinction has been made between apparent authority, and authority which operates by way of estoppel. Dispatch Printing Co. v National Bank (1910) 109 Minn. 440, 50 L.R.A. (N.S.) 74, 124 NW 236. The court says: "Though there is a marked distinction between them, courts and text-writers often confuse implied and apparent authority with agency or authority by estoppel, and apparent authority and estoppel are treated as substantially the same thing. 1 Clark & S. Agency, 143; 2 Enc. L. & P. 817. Such were in effect the instructions complained of in this case. The distinction between these classes of authority or agency is well defined. Implied authority is that which the principal intends his agent to possess, and which is proper, usual, and necessary. to the exercise of the authority actually granted. It includes all such 'acts and things as are directly connected with and essential to the business in hand.' 2 Enc. L. & P. 948. Apparent authority is that which, though not actually granted, the principal knowingly permits the agent to exercise, or which he holds him out as possessing. 'Columbia Mill Co. v National Bank (1893) 52 Minn. 224, 53 NW 1061; Connell v McLoughlin (1895) 28 Or. 230, 42 Pac. 218; Harisburg Lumber Co. v Washburn (1896) 29 Or. 150, 44 Pac. 390. Agency or authority by estoppel arises in those cases where the principal, by his culpable negligence, permits his agent to exercise powers not granted to him, even though the principal have no notice or knowledge of the conduct of the agent. It is sufficient to estop the principal from disputing the authority, in such cases, that the course of dealing in the transaction of the principal's business, between the agent and the third persons, was such as to justify them in believing that he possessed the requisite authority, and to make it the duty of the principal to know the manner in which the agent was conducting his affairs. So that where it appears that the principal knew, or by a proper supervision of the affairs of the agency ought to have known, of the acts of the agent, or the general course and manner in which he was conducting the business of the agency, he is estopped as against innocent third persons from denying the power of the agent to act. This doctrine is more or less commingled with 'apparent authority', though, strictly speaking, they are essentially different in this: 'Apparent authority is not founded in negligence of the principal, but in the conscious permission of the acts beyond the powers granted, whereas the rule of estoppel has its basis in the negligence of the

principal in failing properly to supervise and control the affairs of the agent.' That estoppel is the basis of apparent authority is recognized in a subsequent appeal of Dispatch Printing Co. v National Bank (1911) 115 Minn. 157, 132 NW 2. It is there said: 'The doctrine of apparent agency is not limited to the conduct of the principal. The authority must have been actually apparent to the parties dealing with the agent. The apparent power of the agent is to be determined by the acts of the principal, and not by the acts of the agent. * * * All the elements of estoppel must be present. There must be conduct calculated to mislead, and it must be under circumstances which justified the claim that the principal should have expected that the representations would be relied and acted upon, and it must appear that they were relied and acted upon in good faith, to the injury of the innocent party'."

What did the plaintiff in this case do that can be advanced in support of the contention that it is now estopped to demand recovery of its money from the defendant bank?

It employed Peters for a long period of years as its agent and attorney to collect its accounts. There is not a suggestion that it ever knew of any case in which its attorney received checks or drafts payable to its order—and which were indorsed by its attorney with its name. It received for many years the net proceeds of collections. There can be no presumption that it knew that any of these were represented by drafts payable to its order. As far as the evidence shows its knowledge, they may all have been payable to its attorney. In the instant case, it deposited its attorney's check, still entirely consistent with absolute ignorance that the check from its debtor was not made payable to its attorney.

We find no evidence of authority, express or implied, in the attorney to indorse the check payable to his client. We find no facts to exist warranting a conclusion that the plaintiff was estopped to claim its own money from the bank, and which the defendant bank had wrongfully paid its attorney upon an indorsement, which we do not find to have been a conscious imitation of the signature of the plaintiff, but which was found by the trial court and Common Pleas Court to have been made without authority, express or implied from the plaintiff.

The judgment is affirmed.

MATTHEWS and HAMILTON, JJ, concur.