THIRD NATIONAL BANK AND TRUST CO., APPELLEE, *v.* DIAMOND SAVINGS AND LOAN CO., APPELLANT, ET AL.

(No. 10407—Decided December 30, 1987.)

*Charles S. Goodwin,* for appellee.

*William G. Compton* and *James M. Hill,* for appellant.

*Eloise Gries Cookson,* for Bank One.

*William L. Havemann,* for First Federal Savings and Loan Company.

FAIN, J. Diamond Savings and Loan Company ("Diamond") appeals from a judgment entered in the Montgomery County Court of Common Pleas dismissing its third-party complaint against First Federal Savings and Loan Company ("First Federal"). After reviewing the record, we conclude that in light of Diamond's own

failure to comply with reasonable commercial banking standards, it may not assert estoppel against First Federal. Consequently, the trial court's decision granting First Federal's motion to dismiss will be affirmed.

There is no dispute as to the facts which gave rise to this case. First Federal is a savings and loan association located in Rochester, New York. In 1983, First Federal initiated a foreclosure proceeding in the Montgomery County Court of Common Pleas. After the subject property had been sold at auction, the Montgomery County Sheriff's office issued a check payable to the order of First Federal in the amount of $22,325.55 drawn on an account the sheriff's office maintained at Third National Bank and Trust Company ("Third National"). This check was then delivered to Robert L. Cohodes, a Columbus attorney who was acting as First Federal's local counsel in the foreclosure proceeding. The check, bearing Cohodes' handwritten endorsement, was delivered to Diamond. Diamond accepted the check and the proceeds were then deposited in an account Cohodes maintained at Diamond.[1]

Diamond endorsed the check and delivered it to Bank One. Bank One in turn transmitted the check to Third National through the Federal Reserve System. Upon receiving the check, Third National debited the Montgomery County Sheriff's office account.

It appears that in the months following the foreclosure sale, First Federal began to wonder why the proceeds were not forthcoming and made inquiry of its New York counsel. According to the deposition of Jeffrey J. Guzi, a First Federal employee, it was his understanding based on his conversations with counsel that the foreclosure sale had fallen through and that a second sale had been scheduled for August 1984. Several months later, in February 1985, First Federal informed Third National and the Montgomery County Sheriff's office of the fraudulent endorsement by Cohodes and requested that a new check be issued. Third National recredited the Sheriff's office account and a new check was issued to First Federal.

Third National marked the original check "RETURNED UNPAID" by reason of a forged endorsement and sent it to the Federal Reserve Bank for reprocessing. In a letter to Third National dated May 17, 1985, Bank One stated that since Diamond had refused to give credit for the check, Bank One had no alternative but to return the check.

On July 26, 1985, Third National filed a complaint against Bank One and Diamond in the Montgomery County Court of Common Pleas claiming breach of transfer and presentment warranties. The complaint requested judgment against Diamond, Bank One, and Cohodes, jointly and severally, in the amount of $22,325.55, plus interest and costs.

At one point in the proceedings below, Diamond filed a third-party complaint against First Federal claiming that First Federal had ratified and/or was estopped from denying the validity of Cohode's endorsement. Diamond claimed that if it were liable to Third National, First Federal would in turn be liable to Diamond since it would be unjustly enriched if it were allowed to keep the proceeds. First Federal filed a motion to dismiss Dia-

---

[1] According to the parties, Cohodes' whereabouts are unknown. Cohodes was indefinitely suspended from the practice of law in 1984 for commingling client funds. *Columbus Bar Assn.* v. *Cohodes* (1984), 9 Ohio St. 3d 83, 9 OBR 313, 459 N.E. 2d 494. In 1985, Cohodes was permanently disbarred. *Columbus Bar Assn.* v. *Cohodes* (1986), 22 Ohio St. 3d 221, 22 OBR 370, 490 N.E. 2d 591.

mond's third-party complaint on June 27, 1986.

In a judgment entry filed March 16, 1987, the trial court granted summary judgment in favor of Third National against Diamond and Bank One. With regard to First Federal's motion to dismiss Diamond's third-party complaint, the trial court held as follows:

"1.  First Federal did not properly follow through on the foreclosure proceeding at issue due to its heavy volume of accounts and staffing problems, and if it had properly followed through, the Cohodes forgery would have been discovered shortly after it occurred.

"2.  Despite knowledge that the first sale of the property in question had been completed, First Federal had no duty under the U.C.C. to the depository, collecting and drawee banks to make an inquiry as to why payment was not forthcoming or to inform them of the unauthorized signature.

"3.  There being no duty to these banks, First Federal was not precluded from denying the validity of the signature when the forgery was discovered some eighteen (18) months late.

"4.  Without a duty to follow up on the sale, First Federal has not been unjustly enriched and Diamond's Third-Party claim against it must be dismissed."

From that decision, Diamond appeals.

Diamond's sole assignment of error is as follows:

"The trial judge erred in granting third-party defendant-appellee, First Federal Savings and Loan of Rochester's motion to dismiss, in that it clearly owed a duty to third-party plaintiff-appellant, Diamond Savings and Loan Company, to properly discover and disclose the allegedly forged endorsement."

On appeal, Diamond argues that the trial court's decision to dismiss its third-party complaint against First Federal is contrary to both R.C. 1303.40(A) and the general principles of equity which supplement the Uniform Commercial Code ("UCC").[2] According to Diamond, the great length of time which went by between the foreclosure sale and First Federal's discovery of Cohodes' unauthorized endorsement gives rise to a genuine issue as to whether First Federal should be precluded from denying the validity of Cohodes' signature. In support, Diamond relies upon the following cases: *Federal Pacific Elec. Co.* v. *First Pennsylvania Bank* (1979), 266 Pa. Super. 471, 405 A. 2d 530; *Thermo Contracting Corp.* v. *Bank of New Jersey* (1976), 69 N.J. 352, 354 A. 2d 291; *Fulka* v. *Florida Commercial Banks, Inc.* (Fla. App. 1979), 371 So. 2d 521; *Eutsler* v. *First Natl. Bank, Pawhuska* (Okla. 1982), 639 P. 2d 1245; *Common Wealth Ins. Systems, Inc.* v. *Kersten* (1974), 40 Cal. App. 3d 1014, 115 Cal. Rptr. 653. First Federal argues in response that since it had no knowledge of Cohodes' act and no duty to speak, its silence may not serve as the basis for an estoppel. First Federal also contends that since both it and Diamond passively facilitated Cohodes' fraud, both parties

---

[2] R.C. 1303.40(A) states that "[a]ny unauthorized signature is wholly inoperative as that of the person whose name is signed unless he ratifies it or is precluded from denying it[.]" In addition Diamond relies upon Official Comment 4 to Section 1-201, Uniform Commercial Code (R.C. 1303.40), which states:

"The words 'or is precluded from denying it' are retained in [division (A)] to recognize the possibility of an estoppel against the person whose name is signed, as where he expressly or tacitly represents to an innocent purchaser that the signature is genuine; and to recognize the negligence which precludes a denial of the signature."

are on an equal footing and unjust enrichment does not apply.

We note at the outset that we disagree with the trial court's conclusion that First Federal owed no duty to follow up on the foreclosure proceedings. In our opinion, even though such a duty is not expressly imposed by the UCC (R.C. Chapters 1301 to 1309), in the prudent conduct of its business transactions a bank should be attentive to ongoing transactions and should make inquiry when it receives an indication, as First Federal did, that something has gone wrong with a transaction. This is but a special case of the general duty of one injured by a wrongful act or omission, to "use reasonable care to avoid loss or to minimize the damages resulting." 30 Ohio Jurisprudence 3d (1981) 27, Damages, Section 16, and the cases cited therein. The fact that First Federal was in the process of being merged with other savings and loan associations and was in a state of disarray may serve to explain its otherwise puzzling failure to discover that it was a victim of Cohodes' misconduct, but we do not believe that this fact alone absolved First Federal of any responsibility to pay attention to its ongoing transactions.

However, this does not end our inquiry. We note that the check which Cohodes endorsed and presented to Diamond was payable solely to First Federal. Counsel for Diamond conceded at oral argument that Cohodes' endorsement, including the notation that the check was "For Deposit Only," was a single endorsement, and the first endorsement, of a check made payable to First Federal. While Cohodes' endorsement identified him as an attorney, there is no indication that he had express authority to endorse checks payable to First Federal or to deposit the proceeds of those checks in his own account.[3] It is also important to note that the check was for a considerable amount. Considering all of these facts together, we conclude that Diamond was culpably negligent in its handling of the Third National check and that this negligence contributed to the success of Cohodes' scheme. In our opinion, because of its negligence, Diamond may not assert estoppel against First Federal.

On this issue, we find helpful a series of cases from California. In the first, *Sun 'n Sand, Inc.* v. *United California Bank* (1978), 21 Cal. 3d 671, 148 Cal. Rptr. 329, 582 P. 2d 920, a Sun 'n Sand employee prepared checks drawn on Sun 'n Sand's account payable to United California Bank and obtained signatures of corporate officers authorized to issue checks. The employee would then alter the amount on the checks and deposit the proceeds in her personal account at United California Bank. United California Bank then submitted the checks to Sun 'n Sand's bank which debited Sun 'n Sand's account. *Id.* at 678-679, 148 Cal. Rptr. at 335, 582 P. 2d at 926.

Upon discovering the fraud, Sun 'n Sand filed a complaint against United California Bank alleging various causes of action, including a cause of action for negligence. The California Supreme Court held that a cause of action based upon negligence would lie against United California Bank in favor of Sun 'n Sand. According to the court:

"We agree that an attempt by a third party to divert the proceeds of a check drawn payable to the order of a bank to the benefit of one other than

---

[3] An attorney employed to collect an account for a client has no implied authority to endorse the client's name upon a check received by the attorney in satisfaction of the obligation which he is employed to collect. *Central Trust Co.* v. *Hahn-Jacobson Co.* (App. 1935), 20 Ohio Law Abs. 433, 4 O.O. 509, 33 N.E. 2d 388.

the drawer or drawee suggests a possible misappropriation. Accordingly, we conclude that Sun 'n Sand's allegations define circumstances sufficiently suspicious that UCB should have been alerted to the risk that Sun 'n Sand's employee was perpetrating a fraud. By making reasonable inquiries, UCB could have discovered the fraudulent scheme and prevented its success." *Id.* at 694-695, 148 Cal. Rptr. at 345, 582 P. 2d at 936.

The court went on to state the policy considerations which must be considered in determining whether a duty to exercise reasonable care exists:

"* * *We have often recognized that the imposition of a duty to exercise reasonable care in given circumstances depends on the balancing of a number of policy considerations. (See *Goodman* v. *Kennedy* (1976) 18 Cal. 3d 335, 342 [134 Cal. Rptr. 375, 556 P. 2d 737], and cases cited therein.) The most important of these were set forth in *Rowland* v. *Christian* (1968) 69 Cal. 2d 108, 113, [70 Cal. Rptr. 97, 443 P. 2d 561, 32 A.L.R. 3d 496], and include '* * * the foreseeability of harm to the plaintiff, the degree of certainty that the plaintiff suffered injury, the closeness of the connection between the defendant's conduct and the injury suffered, the moral blame attached to the defendant's conduct, the policy of preventing future harm, the extent of the burden to the defendant and consequences to the community of imposing a duty to exercise care with resulting liability for breach, and the availability, cost, and prevalence of insurance for the risk involved.' Thus, the burden on banks that would result if we recognize a duty of inquiry in the circumstances defined by the allegations herein is a relevant consideration.

"It is settled, however, that 'the chief element in determining whether defendant owes a duty or an obligation to plaintiff is the foreseeability of the risk * * *.' (*Dillon* v. *Legg* (1968) 68 Cal. 2d 728, 740 [69 Cal. Rptr. 72, 441 P. 2d 912, 29 A.L.R. 3d 1316]; see also *Weirum* v. *RKO General, Inc.* (1975) supra, 15 Cal. 3d 40, 46; *Tarasoff* v. *Regents of University of California* (1976) 17 Cal. 3d 425, 434-435, [131 Cal. Rptr. 14, 551 P. 2d 334, 83 A.L.R. 3d 1166].) Our conclusion that UCB should have appreciated the indicia of misappropriation is, of course, nothing other than a determination that Sun 'n Sand's loss was reasonably foreseeable. We are not persuaded that commerce will be so impeded by a duty of inquiry in this context that we should depart from the fundamental principle that actors are liable for reasonably foreseeable losses occasioned by their conduct." *Id.* at 695, 148 Cal. Rptr. at 345-346, 582 P. 2d at 936-937.

The court went on to describe the circumstances under which a depository bank's duty of inquiry arises:

"* * * The duty is narrowly circumscribed: it is activated only when checks, not insignificant in amount, are drawn payable to the order of a bank and are presented to the payee bank by a third party seeking to negotiate the checks for his own benefit. Moreover, the bank's obligation is minimal. We hold simply that the bank may not ignore the danger signals inherent in such an attempted negotiation. There must be objective indicia from which the bank could reasonably conclude that the party presenting the check is authorized to transact in the manner proposed. In the absence of such indicia the bank pays at its peril." *Id.* at 695-696, 148 Cal. Rptr. at 346, 582 P. 2d at 937. See, also, *Joffe* v. *United California Bank* (1983), 141 Cal. App. 3d 541, 190 Cal. Rptr. 443; *E.F. Hutton & Co.* v. *City Natl. Bank* (1983), 149 Cal. App. 3d 60, 196 Cal. Rptr. 614; *City Natl. Bank* v. *Crocker Natl. Bank* (1983), 197 Cal. Rptr. 721.

Although the above-cited cases are factually distinct from the present case, we find their reasoning instructive. In this case, it appears to us that the circumstances surrounding the endorsement and deposit of the Third National check were sufficiently suspicious to put Diamond on notice that something irregular was taking place. If Diamond had been more alert to these circumstances and had made further inquiry when Cohodes first presented the check, the fraud could have been prevented altogether. Moreover, in our opinion, the risk of harm to First Federal and Third National was foreseeable and it would not be unduly burdensome to impose a duty upon Diamond to make inquiry before depositing into *Cohodes'* account the proceeds of a check payable to *First Federal* and endorsed "For Deposit Only." Therefore, we conclude that Diamond failed to exercise due care in negotiating the check as it did and depositing the proceeds in Cohodes' own account. We further conclude that this negligence precludes Diamond from asserting an estoppel against First Federal.

We find support for our position in a case from Arizona, *Cook* v. *Great Western Bank & Trust* (Ariz. App. 1984), 141 Ariz. 80, 685 P. 2d 145. In that case, Joseph D. Cook loaned $30,000 to Mel E. Haining, a pavement subcontractor doing business as American General. As part of the loan agreement, Haining executed an assignment to Cook of $36,000 of the proceeds of a contract Haining had entered into with Ray Stevens Paving. Two months later, Ray Stevens Paving issued a check drawn on the Arizona bank made payable jointly to American General and Cook. The check was delivered to Haining, whose bookkeeper deposited the check at Great Western Bank & Trust with the purported endorsements of both payees. The Arizona bank paid the check.

Ten months after learning of Haining's actions, Cook filed suit against Haining and the banks claiming that his endorsement was a forgery. At the time Cook filed his complaint, the banks held no proceeds of the check and Haining was unavailable for service of process. The banks appealed from the trial court's grant of summary judgment in favor of Cook. *Id.* at 82-83, 685 P. 2d at 147-148.

On appeal, the banks argued that under Section 44-2541, Arizona Revised Statutes (UCC 3-404), Cook's ten-month delay in notifying them of the forgery either constituted a ratification or else precluded him from denying the authenticity of the signature. *Id.* at 83, 685 P. 2d at 148. The Arizona appellate court held that the record before it was inadequate to enable it to conclude as a matter of law that Cook's ten-month delay precluded him from denying the authenticity of the endorsement. *Id.* at 85, 685 P. 2d at 150.

However, the court held that the estoppel argument was not available to the banks if they had failed to exercise due care when they cashed the check from Ray Stevens Paving. According to the court, there were substantial factual issues concerning the commercial reasonableness of the banks' actions and these issues precluded summary judgment in favor of either Cook or the banks on the issue of estoppel. *Id.* at 86, 685 P. 2d at 151. The appellate court reversed the decision of the trial court and remanded the cause for further proceedings. *Id.* at 89, 685 P. 2d at 154.

In cases of this kind, where two or more innocent parties are the victims of a third party's misconduct, the victim who has diligently sought to protect himself from the risk of injury should be protected in preference to the victim who has been careless in the protection of his rights. See, *e.g.,* R.C. 1304.29(C). In the case before us, we

cannot say that Diamond Savings has been any more diligent, or less careless, than First Federal.

Diamond's assignment of error is overruled. The judgment of the trial court will be affirmed.

*Judgment affirmed.*

BROGAN and WOLFF, JJ., concur.