JOURNAL ENTRY AND OPINION
{¶ 1} The appellant, Tricon Roofing, Inc. ("Tricon"), appeals the decision of the Cuyahoga County Court of Common Pleas, Civil Division, which granted the motions for summary judgment of appellees, Gabor's Dunham Fast Check, Inc. ("Gabor's") and Keybank National Association ("Keybank").
 {¶ 2} The facts of this case are undisputed. From September 7 through December 9, 1999, Quintillo C. Alonzo, cashed nine checks totaling $22,800, made payable to Tricon, at Gabor's Fast Check. Gabor's is owned by Agnes Gabor and run by her son, Mike Gabor. Gabor's is a grocery and delicatessen, not in the business of cashing checks for profit. The checks were endorsed "Tricon Roofing, Inc., Quintillo C. Alonzo Pres." The nine checks in question were cashed for full face value and subsequently deposited into Gabor's account at Keybank.
 {¶ 3} Alonzo misappropriated the cashed funds belonging to Tricon and was sued by Tricon's president, Mark Collins. Alonzo confessed judgment in the amount of $90,000, plus interest, not dischargable in bankruptcy.
 {¶ 4} Alonzo was a foreman and vice president of Tricon Roofing from October 1991 until his termination in December 1999. Alonzo's job duties at Tricon included supplying bids, preparing invoices, receiving checks, crediting customer accounts on the computer, and making bank deposits. Alonzo also had authority to endorse checks made payable to Tricon.
 {¶ 5} Alonzo and Collins patronized Gabor's on a regular basis. They were seen at Gabor's together and separately. Mike Gabor had a social and professional relationship with both Collins and Alonzo. Mike Gabor has known Mark Collins for at least 10 years and Alonzo for at least 20 years. In 1992, Tricon installed a new roof on Gabor's Fast Check.
 {¶ 6} On October 26, 2001, Tricon sued Gabor's alleging negligence, conspiracy to commit conversion, and conversion in connection with the nine checks that were diverted from Tricon and cashed by Gabor's. Tricon then amended its complaint to include Keybank as a defendant, alleging conversion, negligence, and breach of transfer warranty. Keybank and Gabor's filed separate motions for summary judgment. On November 27, 2002, the trial court granted summary judgment in favor of both Keybank and Gabor's.
 {¶ 7} The trial court held as follows: (1) Gabor had no knowledge or reason to know that the Tricon representative lacked the authority to cash checks, (2) Plaintiff's negligence claims are inadequate to overcome the statutorily prescribed standards of reasonable care, with which Gabor and Keybank complied, (3) Plaintiff's conversion claim fails because the checks were not "suspicious" on their face. Defendants acted in good faith when accepting and paying the fraudulent checks, (4) R.C. 1303.60(A), exempts claims of conversion when the instruments are transferred by negotiation, (5) Defendants Keybank and Gabor's are holders in due course of the instrument, making them immune to allegations of fraud, negligence, or conversion, and (6) transfer warranties were not breached because, unlike an unknown thief, Alonzo was an employee responsible for receiving checks and making bank deposits. R.C. 1303.47 makes the endorsement binding upon the employer when an entrusted employee fraudulently endorses a negotiable instrument to a good faith recipient, thereby authorizing the endorsement.
 {¶ 8} For the following reasons, we affirm the trial court.
 {¶ 9} Appellant presents the following assignment of error:
 {¶ 10} "The Trial Court Erred To The Substantial Detriment Of The Appellant In Granting Each Defendant's Motion For Summary Judgment."
 {¶ 11} Civ.R. 56 provides that summary judgment may be granted only after the trial court determines: 1) no genuine issues as to any material fact remain to be litigated; 2) the moving party is entitled to judgment as a matter of law; and 3) it appears from the evidence that reasonable minds can come to but one conclusion and viewing such evidence most strongly in favor of the party against whom the motion for summary judgment is made, that conclusion is adverse to that party. Norris v.Ohio Std. Oil Co. (1982), 70 Ohio App.2d 1; Temple v. Wean United, Inc.
(1977), 50 Ohio St.2d 317.
 {¶ 12} It is well established that the party seeking summary judgment bears the burden of demonstrating that no issues of material fact exist for trial. Celotex Corp. v. Catrett (1987), 477 U.S. 317,330; Mitseff v. Wheeler (1988), 38 Ohio St.3d 112, 115. Doubts must be resolved in favor of the nonmoving party. Murphy v. Reynoldsburg (1992),65 Ohio St.3d 356.
 {¶ 13} In Dresher v. Burt (1996), 75 Ohio St.3d 280, the Ohio Supreme Court modified and/or clarified the summary judgment standard as applied in Wing v. Anchor Medina Ltd. of Texas (1991), 59 Ohio St.3d 108. Under Dresher, "* * * the moving party bears the initial responsibility of informing the trial court of the basis for the motion, and identifying those portions of the record which demonstrate the absence of a genuine issue of fact or material element of the nonmoving party's claim." Id. at 296. The nonmoving party has a reciprocal burden of specificity and cannot rest on mere allegations or denials in the pleadings. Id. at 293. The nonmoving party must set forth "specific facts" by the means listed in Civ.R. 56(C) showing a genuine issue for trial exists. Id.
 {¶ 14} This court reviews the lower court's granting of summary judgment de novo. Brown v. Scioto Bd. of Commrs. (1993),87 Ohio App.3d 704. An appellate court reviewing the grant of summary judgment must follow the standards set forth in Civ.R. 56(C). "The reviewing court evaluates the record * * * in a light most favorable to the nonmoving party * * *. [T]he motion must be overruled if reasonable minds could find for the party opposing the motion." Saunders v. McFaul
(1990), 71 Ohio App.3d 46, 50; Link v. Leadworks Corp. (1992),79 Ohio App.3d 735, 741.
 {¶ 15} Appellant claims the trial court usurped the functions of a jury by making factual determinations regarding clearly conflicting evidence and passing upon the credibility of witnesses. We disagree with the appellant's proposition and find the trial court properly ruled for appellees as a matter of law.
 {¶ 16} First, appellant claims that Alonzo fraudulently endorsed nine checks as the president of Tricon and presented the nine checks to Gabor's for cashing. The Ohio Revised Code sets forth the "EMPLOYER'S RESPONSIBILITY FOR FRAUDULENT INDORSEMENT[1] BY EMPLOYEE" in R.C.1303.47. R.C. 1303.47(A)(2)(a) defines a "fraudulent indorsement" as "* * * an instrument payable to the employer, a forged indorsement purporting to be that of the employer." R.C. 1303.47(3) defines the word "responsibility" with respect to instruments as meaning the authority to do any of the following: "(a) To sign or indorse instruments on behalf of the employer; (b) To process instruments received by the employer for bookkeeping purposes, for deposit to an account, or for other disposition."
 {¶ 17} Focusing on undisputed facts, we find that Alonzo had actual authority to endorse checks on behalf of Tricon, to deposit the checks in Tricon's account, and to make entries in the computer to credit customer accounts. This court applies R.C. 1303.47 and excludes the evidence the appellant claims is conflicting — Mike Gabor's testimony stating that Mark Collins was present when Alonzo cashed or endorsed checks made payable to Tricon.
 {¶ 18} "For the purpose of determining the rights and liabilities of a person who, in good faith, pays an instrument or takes it for value or for collection, if an employer entrusted an employee with responsibility with respect to the instrument and the employee or a person acting in concert with the employee makes a fraudulent indorsement of the instrument, the indorsement is effective as the indorsement of the person to whom the instrument is payable if it is made in the name of that person." R.C. 1303.47(B).
 {¶ 19} All nine checks presented to Gabor's and Keybank had similar endorsements. Alonzo endorsed the checks by writing, "Quintillo Alonzo Pres., Castle Roofing/Tricon Roofing." Appellant fails to provide any evidence showing Mike Gabor lacked good faith in his transactions with Alonzo. The following facts are undisputed in the record: Mike Gabor stated that he or his mother cashed every check for Alonzo; he knew both Collins and Alonzo for a minimum of ten years; he believed that Tricon was owned by both men based on his personal relationships with them; and he had cashed checks for both Alonzo and Collins in the past.[2]
Furthermore, it is undisputed that Mike Gabor paid full value for the checks, gained nothing from the transactions, and Alonzo had authority to endorse checks made payable to Tricon. This court finds Alonzo was an entrusted employee with a responsibility in respect to the nine cashed checks; therefore, his signature shall be treated as the valid endorsement of Tricon. Thus, appellant fails to establish a claim for conversion or conspiracy to commit conversion against Keybank or Gabor's.
 {¶ 20} Third parties may be held liable for an employee's fraudulent endorsement if they fail to "exercise ordinary care" in paying or taking the instrument and that failure substantially contributes to loss resulting from the fraud. Ibid. With respect to Gabor's, R.C.1303.01(9) defines "ordinary care" as "in the case of a person engaged inbusiness means observance of the reasonable commercial standards that are prevailing in the area in which the person is located with respect to the business in which the person is engaged." (Emphasis added.) Appellant has not presented evidence of other check cashing procedures at other delicatessens/grocery stores in the area. Appellant only relies on the fact that Gabor's had not followed their own check cashing procedure.
 {¶ 21} We reject appellant's argument that Gabor's failed to exercise "ordinary care" by not following its own check cashing procedure. Gabor's check cashing procedure required that its employee write the customer's telephone number and social security number on each check. The Gabor's employee who took the check was then required to initial the check. The check cashing procedure was put into place to protect Gabor's, not customers like Tricon. Furthermore, Mike Gabor knew both Collins and Alonzo on a personal level and did not require proof of identification. Looking at the facts of this case, given Alonzo's job title and responsibilities at Tricon, Mike Gabor had no reason to believe that Alonzo lacked authority to cash checks.
 {¶ 22} The Ohio Revised Code defines "ordinary care" as "In thecase of a bank that takes an instrument for processing for collection or payment by automated means, reasonable commercial standards do not require the bank to examine the instrument if the failure to examine does not violate the bank's prescribed procedures, and the bank's procedures do not vary unreasonably from general banking usage not disapproved by this chapter * * *" (Emphasis added.) Id. Appellant fails to provide any evidence as to Keybank's check cashing procedure, how other banks in Cleveland accept checks for deposit, how corporations endorse checks, or how Keybank deviated from the reasonable commercial standard. Appellant simply relies on the fact that Alonzo handwrote the endorsement of Tricon. From the deposition testimony of Mark Collins, this practice was allowed when the company's rubber endorsement stamp was not available.
 {¶ 23} The purpose of R.C. 1303.47 was clearly stated by the legislature, "* * * the risk of loss for fraudulent indorsements by employees who are entrusted with the responsibility with respect to checks should fall on the employer rather than the bank that takes the check or pays it, if the bank was not negligent in the transaction." Appellant has failed to provide any evidence that would support a claim of negligence for a breach of "ordinary care" against Keybank or Gabor's.
 {¶ 24} Next, appellant claims Keybank breached the transfer warranty provisions found in the Ohio Commercial Code and converted funds intended for Tricon. Appellant's position is clearly erroneous and fails to state a claim upon which relief can be granted. The Ohio Commercial Code sets forth the following transfer warranty:
 {¶ 25} "(A) A customer or collecting bank that transfers an item and receives a settlement or other consideration warrants all of the following to the transferee and to any subsequent collecting bank:"
(Emphasis added.) R.C. 1304.17(A). A "collecting bank" is defined as a bank handling an item for collection except the payor bank. R.C.1304.01(B)(5). "An instrument is transferred when it is delivered by a person other than the issuer for the purpose of giving to the person receiving delivery the right to enforce the instrument" R.C. 1303.22(A).
 {¶ 26} Keybank has made transfer warranties to the transferee and subsequent collecting banks, but has made no transfer warranty to Tricon. Alonzo had intercepted nine checks payable to Tricon and presented them to Gabor's to be cashed. Alonzo had the authority to endorse checks payable to Tricon, although he lacked the authorization to cash checks. Gabor's accepted and cashed the checks. Gabor's then presented the nine checks for deposit with Keybank. Following the Ohio Commercial Code, Alonzo transferred the items and made a transfer warranty to Gabor's. Gabor's then transferred the items and made a transfer warranty to Keybank. It is clear from the record that no party made a transfer warranty to appellant.
 {¶ 27} This court also finds appellant's reliance on VillageLeasing, Inc. v. Society Nat'l Bank (1984), 15 Ohio App.3d 126 and ThirdNational Bank v. Diamond Savings Loan (1987), 43 Ohio App.3d 140, to be misguided and factually distinguishable from the instant matter.
 {¶ 28} Quintillo Alonzo had actual authority to endorse checks made payable to Tricon. He was the vice president of Tricon and had major responsibilities in the company. Although Alonzo had authority to sign for Tricon, he lacked the authorization to cash checks, which was unknown to Gabor's and Keybank. Tricon's proper suit for conversion was against a trusted employee, Alonzo Quintillo.
 {¶ 29} The few facts in conflict are not material when applied to the substantive law; therefore, the trial court's judgment on the motion for summary judgment as to Keybank and Gabor's is affirmed.
ANN DYKE, P.J., AND ANTHONY O' CALABRESE, JR., J., CONCUR.
[1] Although the statute uses the "indorse" spelling, we have used the common usage spelling, "endorse," throughout this opinion.
[2] In the deposition testimony of Mark Collins, Collins was asked whether he had ever cashed checks at Gabor's in the past. Collins replied, "I don't recall." When asked whether he was present when Alonzo cashed any checks payable to Tricon, Collins replied, "I don't recall." Collins later signed an affidavit denying he was present.